**TEXAS DEPARTMENT OF TRANSPORTATION,**
Appellant,

v.

**Reinhard Richard RAMMING and Mary Jane Ramming, Appellees.**

**No. C14–92–00228–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 26, 1993.

Rehearing Denied Sept. 30, 1993.

Jeff Senter, Richard D. Naylor, Austin, for appellant.

John Milutin, Houston, for appellees.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

CANNON, Justice.

This is an appeal of a judgment against the Texas Department of Transportation (the "State") for negligence causing direct personal injury to Reinhard Ramming and derivative injury to his wife Mary. The State complains that (1) the jury charge lacked instructions on premises liability, (2) Mary Ramming's loss of consortium award caused the Rammings' total award to exceed the Texas Tort Claims Act liability cap, and (3) the award of prejudgment interest also caused the State's liability to exceed the statutory cap. The Rammings cross-appeal that the State waived the liability limitation of the Tort Claims Act. We affirm as modified.

On September 20, 1988, Reinhard Ramming was driving his vehicle on State Highway 332 in Lake Jackson, Brazoria County, Texas. Ramming's vehicle collided with a vehicle operated by Lisa Ann Vackar. Immediately before the collision, a State Highway Department employee had disconnected the power source of the traffic signal at the intersection and was in the process of reconnecting it when the collision occurred.

Reinhard Ramming and his wife, Mary, sued the State under the Texas Tort Claims Act. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.001, *et seq.* (Vernon 1986 & Supp. 1993). The Rammings alleged that the collision was proximately caused by the negligence of the State, its agents, servants and employees.

Finding the State negligent, the jury awarded Reinhard Ramming $1,000,000. The jury also awarded Mary Ramming $500,-000 for loss of household services and consortium. Pursuant to the liability limitation provision of the Tort Claims Act, the trial court reduced the Rammings' damages to $250,000 each, plus pre- and postjudgment interest.

The State brings six points of error, the Rammings one cross-point. We address the cross-point first.

## I. The Rammings' Cross–Point

The Rammings argue that the State waived any limitation of damages by not pleading the limitation set forth in the Tort Claims Act. *See id.* § 101.023(a). They contend that the trial court should have awarded damages of $1,000,000 to Reinhard Ramming and $500,000 to Mary Ramming plus prejudgment and postjudgment interest. The Rammings ask that we reform the judgment accordingly.

■ The State's first amended answer specifically declares:

[The State] ... has full sovereign immunity both from suit and from liability, save only to the extent of the partial waiver of same given by the Texas Tort Claims Act, ... and it hereby pleads and asserts its claim to and the defense of sovereign immunity and the exemptions and exclusions of the Tort Claims Act.

We find the State's answer effectively invoked § 101.023, "Limitation on Amount of Liability," of the Tort Claims Act. The State did not waive limitation of liability. We overrule the cross-point.

## II. Premises Liability or Negligence?

In point of error one, the State complains that the trial court erred by submitting a jury charge based on general negligence instead of premises liability. In point two, the State argues that the trial court erred by failing to submit premises liability jury instructions. In point three, the State contends that there was no evidence or factually insufficient evidence that the State failed to warn of or failed to correct the condition or malfunction of the traffic signals within a reasonable time after notice.

■ The trial court has great discretion in submitting the jury charge. *See Baker Marine Corp. v. Moseley,* 645 S.W.2d 486, 489 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); Tex.R.Civ.P. 277. This discretion is subject to the requirement that the questions submitted must control the disposition of the case, be raised by the pleadings and evidence, and properly submit the disputed issues for the jury's deliberation. *Id.*

■ Immediately prior to the accident, William Kilpatrick, a traffic signal maintenance technician employed by the State Highway Department, was at the intersection to take an amperage reading in the traffic signal control cabinet. The State Highway Department had received a memorandum from the manufacturer of the signal system about a possible problem with the surge protector. The amperage had to be measured while the signals were functioning.

When Kilpatrick attached the ammeter clamp, a main power wire dislodged causing the signals at the intersection to go out. Kilpatrick attempted several times to reconnect the wire by pushing it back up under the terminal. The wire would not stay connected because the terminal screw or set screw had to be loosened before the wire could be put back into place. Because he did not have a screwdriver to make the repair, Kilpatrick ran to the breaker box and shut off the power to the traffic signals. After shutting off the power, Kilpatrick went to his vehicle, got a screwdriver, and returned to the traffic control cabinet. The collision between Ramming and Vackar occurred while Kilpatrick was in the process of loosening the screw and reattaching the wire. Kilpatrick proceeded to reattach the wire and then ran to the breaker box to turn the signals back on. The signal lights were nonfunctional for approximately three and a half to five minutes.

The Rammings contended that the State was liable because of the negligent activities of Kilpatrick. The trial court submitted the case to the jury on one broad-form general negligence question without any of the accompanying instructions required for a premises liability case. The trial court gave the usual boiler-plate instructions and admonitions for the customary general negligence case including definitions of negligence, ordinary care, and proximate cause.

Question No. 1 asked:

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

a. State Department of Highways and Public Transportation and its employees. _____
b. Lisa Ann Vacker _____
c. Reinhard Richard Ramming _____

The State objected to the first question and requested that the issue be submitted as follows:

### QUESTION NO. 1

Did the negligence, if any, of those named below proximately cause the occurrence in question?

With respect to the condition of the roadway, the State Department of Highways and Public Transportation was negligent, if you find:

a) the condition of the roadway posed an unreasonable risk of harm to a motor vehicle operator exercising ordinary care; and,

b) the State Department of Highways and Public Transportation had actual knowledge of the condition of the roadway that posed an unreasonable risk of harm; and,

c) Reinhard Richard Ramming did not have actual knowledge of the condition of the roadway that posed an unreasonable risk of harm; and,

d) The State Department of Highways and Public Transportation failed to adequately warn Reinhard Richard Ramming of the condition of the roadway or to make that condition safe, within a reasonable time after notice of the roadway condition.

Answer "Yes" or "No" for each of the following:

Reinhard Richard Ramming: _____
Lisa Ann Vackar: _____
State Department of Highways _____
and Public Transportation:

The trial court refused the State's request.

The State argues that the Rammings' claims arose from a malfunctioning traffic signal and constitute a premises liability case under the Tort Claims Act. The State relies on the interrelationship between § 101.022 and § 101.060.

§ 101.022. Duty Owed: *Premise* and Special Defects

(a) *If a claim arises from a premise defect*, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to *the duty to warn* of the absence, condition, or malfunction of traffic signs, signals, or warning devices *as is required by Section 101.060.*

§ 101.022 (emphasis added).

Sec. 101.060. Traffic and Road Control Devices

(a) This chapter does not apply to a claim *arising from* :

\* \* \* \* \* \*

(2) *the absence, condition, or malfunction of a traffic or road sign, signal, or warning device* unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice;

\* \* \* \* \* \*

§ 101.060(a)(2) (emphasis added).

In essence, the State contends that the reference by the section entitled "Duty Owed: *Premise* and Special Defects" to another section dealing with "the absence, condition, or malfunction of a traffic ... signal" establishes this case as a premises liability case. We disagree.

Sections 101.022 and 101.060, read together, establish the duty owed by the State to a plaintiff who sues *under a premises liability claim* involving a traffic signal. However, this is not to say that a claim involving a traffic signal is always a premises liability case. The injuries suffered by Reinhard Ramming did not *arise from* the "absence,

condition, or malfunction" of a traffic signal. The signal lights were not absent or malfunctioning in the sense contemplated by § 101.-060. The lights themselves had been installed and were working as designed. Section 101.060 clearly contemplates conditions and malfunctions that are not actively and contemporaneously being created by a State employee. The notice provision of § 101.-060(a)(2) is meaningless in a situation, as here, where an accident occurred while a State employee was simultaneously creating the accident-causing condition or malfunction. When an ongoing activity creates a dangerous condition or malfunction, the creator possesses at least the mere constructive notice required to trigger a duty to correct. See § 101.060(a)(2). A contemporaneous injury resulting from the condition or malfunction must necessarily have occurred before a reasonable time after notice. That is because the activity, notice, and injury are all concurrent events.

■ We find that § 101.060 applies when a traffic signal is functioning properly but then fails due to component failure, act of God, third party interference, or the non-contemporaneous act of a State employee. The situations contemplated by § 101.060 are different from the case where a State employee engages in a testing/maintenance activity contemporaneously causing injury. Where, as here, the alleged facts support such an ongoing activity/contemporaneous injury theory, then the case need not be presented to the jury in premises liability terms. Rather, a general negligence question is appropriate and sufficient.

The State argues that the Rammings' effort to predicate premise owner/occupier liability upon the activity which allegedly created the dangerous condition, rather than upon the dangerous condition, directly contravenes the principles laid down by the Supreme Court in *Keetch v. The Kroger Co.*, 845 S.W.2d 262 (Tex.1992). We disagree.

In *Keetch* a woman slipped on a floor made slippery by the spraying of flowers. In holding that premises liability applied, not general negligence, the court said:

Keetch may have been injured by a condition created by the spraying but she was not injured by the activity of spraying. At some point, almost every artificial condition can be said to have been created by an activity. We decline to eliminate *all* distinction between premises conditions and negligent activities.

*Keetch, supra* at 264 (emphasis added).

*Keetch* held that "Recovery on a negligent activity theory requires that the person have been injured by or *as a contemporaneous result of* the activity rather than by a condition created by the activity." *Id.* (emphasis added). The court found that "There was *no ongoing activity* when Keetch was injured.... The trial court properly did not submit a negligent activity theory of liability *on these facts.*" *Id.* (emphasis added). The flower spraying occurred 30 minutes before the fall. In effect, the *Keetch* court held that Keetch's fall 30 minutes after the plant spraying was not the contemporaneous result of the spraying activity.

In contrast, Kilpatrick's test/maintenance activity was ongoing at the time of the accident. There was no time gap, much less a 30–minute gap, between the alleged negligent activity and the accident. A holding that the Rammings were entitled to assert a properly-pled negligence theory would not be in conflict with *Keetch*. *See Stanley Stores, Inc. v. Veazey*, 838 S.W.2d 884, 886 (Tex. App.—Beaumont 1992, writ denied) (applying the *Keetch* contemporaneity test).

The State's reliance on *State v. Tennison*, 509 S.W.2d 560 (Tex.1974), is also misplaced. In *Tennison*, a person slipped on a waxed floor and tried to sue the State under a negligence theory. The court held that premises liability law applied because the waxed floor was a premises defect. But, in *Tennison*, the waxing of the floor was not contemporaneous with the injury, and the plaintiff could not sue on a negligence theory for the "manner in which [the State] maintained the floor." *Tennison, supra* at 562. We reiterate *Keetch's* holding that "Recovery on a negligent activity theory requires that the person have been injured by or *as a contemporaneous result of* the activity...." *Keetch, supra* (emphasis added). The facts

of the present case, unlike the facts in *Tennison*, meet the *Keetch* contemporaneity test.

◼ The Rammings' injuries were the result of the negligent use of tangible property, and § 101.021 of the Tort Claims Act controls.

§ 101.021. Governmental Liability

A governmental unit in the state is liable for:

\* \* \* \* \* \*

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

§ 101.021.

Kilpatrick was acting within the course and scope of his employment. He was arguably negligent in dislodging the main wire, in failing to have a screwdriver on his person, in failing to post flagmen or flag warnings, and in repeatedly attempting to reinsert the main wire when he did not have the equipment on his person to secure the wire. Kilpatrick's negligent conduct involved some use of tangible property, including the screwdriver, main wire, screw that secures the main wire, ammeter, and flags.

> [T]he proximate cause of the damages for death or personal injury must be the negligence or wrongful act or omission of the officer or employee acting within the scope of his employment or office. The negligent conduct, however, must involve 'some condition or some use' of tangible property under circumstances where there would be private liability.

*Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 33 (Tex.1983). We note that the *failure* to use tangible personal property can also be actionable. *See Robinson v. Central Texas MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex.1989), where the court held that the failure to use life preservers was actionable. Here, Kilpatrick failed to have a screwdriver readily available or post warning flags. *See also Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 300 (Tex.1976) (failure to issue proper football equipment).

Because the Rammings were entitled to recover under § 101.021, the trial court's submission of a general negligence question did not impose an improper standard of care upon the State. The State is subject to a general negligence standard of care under § 101.021.

In sum, we find that the trial court did not abuse its discretion in submitting the case to the jury via a broad-form negligence question nor in refusing to submit the State's requested instructions. We overrule points of error one and two. Since the State's evidentiary objections in point three presume a premises liability framework, point three is moot.

### III. Loss of Consortium

In points of error four and five, the State complains that the trial court erred in refusing to find that Mary Ramming's claims for loss of household services and consortium were derivative and in entering judgment for an amount in excess of the Tort Claims Act statutory limits as though Mary Ramming suffered a separate injury.

Mary Ramming was not involved in the accident or present at the scene. The jury, however, awarded her $500,000 for loss of household services and consortium.

The State argues that Mary Ramming's losses were derivative of Reinhard Ramming's injuries and not separate bodily injury entitling her to recover under her own "per person" $250,000 cap. The State contends that the Rammings' aggregate direct and derivative damages were subject to one $250,000 "per person" cap. The State maintains that, because the total of the Rammings' jury awards exceeded this cap, the allowable $250,000 should be apportioned.

◼ The liability limitation provision of the Texas Tort Claims Act provides:

§ 101.023. Limitation on Amount of Liability

(a) Liability of the state government under this chapter is limited to money damages in a maximum amount of $250,000 for *each person* ... for bodily injury or death....

§ 101.023(a) (emphasis added).

The State contends that the phrase "each person" refers only to a person who sus-

tained bodily injury or death in the accident. We agree.

■ "Per person" as used in the Tort Claims Act refers to a person injured rather than to a person who suffered a loss as a result of an injury to someone else. *See City of Austin v. Cooksey,* 570 S.W.2d 386, 388 (Tex.1978); *see also Madisonville Indep. School Dist. v. Kyle,* 658 S.W.2d 149, 150 (Tex.1983). Loss of services and consortium are derivative claims. *Harris County v. White,* 823 S.W.2d 385, 388 (Tex.App.—Texarkana 1992, no writ). They constitute elements of damage that flow to one party from injuries sustained by another. *Id.* Consequently, Mary Ramming is not entitled to her own "per person" damage allocation.

■ The Rammings attempt to distinguish the above cited cases on the basis that they are all wrongful death actions. The only explanation they give is to incorrectly assert that loss of consortium is not an element of damages in wrongful death. They cite *Moore v. Lillebo,* 722 S.W.2d 683 (Tex. 1986), for this proposition. While *Moore* did not expressly use the term "loss of consortium," it discussed the awarding of damages for loss of society and companionship in a wrongful death case. *Id.* at 688. Loss of society and companionship are elements of the definition of loss of consortium. *Whittlesey v. Miller,* 572 S.W.2d 665, 666 (Tex.1978). In *Moore,* there was no discussion of husband/wife aspects of loss of consortium because the case involved the death of an adult child. *Moore, supra* at 684. A surviving spouse may indeed recover for loss of consortium in a wrongful death action including loss of society and companionship. *See, e.g., Ortiz v. Santa Rosa Medical Ctr.,* 702 S.W.2d 701, 706 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

Furthermore, courts dealing with non-fatal, personal injury cases, have reached the same result as in the cited wrongful death cases. *See Rosenzweig v. Dallas Area Rapid Transit,* 841 S.W.2d 897, 898 (Tex.App.—Dallas 1992, writ denied) (spouse's loss of household services and consortium claims were derivative of other spouse's personal injury and do not constitute "additional bodily injury" enabling recovery under a separate "per person" liability limit); *see also McGovern v. Williams,* 741 S.W.2d 373, 376 (Tex.1987) (under safety responsibility law, loss of consortium is not "bodily injury" for the purpose of "independent recovery" under a separate "per person" limit of an insurance policy).

The Rammings' reliance on *City of Austin v. Davis,* 693 S.W.2d 31 (Tex.App.—Austin 1985, writ ref'd n.r.e.) is misplaced. The *Davis* court found that, when the bystander doctrine applied, a plaintiff's claim was not derivative. The plaintiff could recover as an independent "person injured" for purposes of damage limitation. *Id.* at 34. But Mary Ramming was not a "bystander" as contemplated by the bystander doctrine. She was not in close proximity to the accident and her loss was not caused by the contemporaneous perception of the accident or its immediate aftermath. *Id.* at 33.

Also, the Rammings' citation to *City of Denton v. Page,* 683 S.W.2d 180 (Tex.App.—1985, rev'd on other grounds, 701 S.W.2d 831 (Tex.1986) is unpersuasive. *Page* held that a wife's claim for loss of consortium was independently cognizable under the Tort Claims Act. *Id.* at 206. But *Page* was reversed on other grounds with the Supreme Court expressly refusing to consider the Texas Tort Claims Act issues. *Page* has suspect precedential value, and courts have declined to follow it. *See, e.g., Rosenzweig,* 841 S.W.2d at 898 *and White,* 823 S.W.2d at 387–88.

In sum, we find that Mary Ramming's claims for loss of household services and consortium were derivative of Reinhard Ramming's injuries. Such claims are not entitled to a separate, "per person" liability limitation. On appeal, the Rammings' sole contention is that Mary Ramming is entitled to her own $250,000 "per person" liability cap. Mary Ramming does not seek a share of her husband's award. Therefore, we need not address the issue of the *pro rata* apportionment of direct and derivative damage awards.

We sustain points of error four and five. We reform the judgment to delete Mary Ramming's $250,000 award for household services and consortium.

## IV. Prejudgment Interest

In point six, the State complains that the trial court erred in entering judgment for the Rammings in excess of the statutory limit provided by the Texas Tort Claims Act in that the trial court added prejudgment interest over and above the statutory limit.

At issue is whether § 101.023 of the Tort Claims Act caps the Rammings' recovery at $250,000, thereby precluding an award of prejudgment interest. We hold that it does.

§ 101.023. Limitation on Amount of Liability

(a) *Liability* of the state government under this chapter is limited to money damages in a maximum amount of $250,000 for each person ... for bodily injury or death....

§ 101.023(a) (emphasis added).

■ Where the language of a statute is unambiguous, we give effect to the statute according to its terms. *See Mathews Constr. Co. v. Jasper Housing Constr. Co.*, 528 S.W.2d 323, 326 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.). Section 101.023 imposes a limit on the State's *liability.* "[Liability] is a broad legal term.... It has been referred to as of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely." BLACK'S LAW DICTIONARY 823 (5th ed. 1979). Therefore, the only legal obligations, however characterized, capable of being imposed on the State are those specified by § 101.023. Section 101.023 specifies that the State's only permissible *liability* is "money damages in a maximum amount of $250,000." Therefore, § 101.023 states simply and unequivocally that the State can only be liable for "money damages" (as opposed to injunctive relief) that do not exceed $250,000. In other words, § 101.023 states the exclusive mode and measure of liability for which the State is willing to waive sovereign immunity.

■ It is well established that prejudgment interest "as damages" may not cause the statutory cap to be exceeded. *Weller v. State*, 682 S.W.2d 234, 234 (Tex.1984) (liability limitation precludes award of prejudgment interest as damages when actual damages awarded exceed the statutory cap); *State Dep't of Highways and Pub. Transpr. v. Bacon*, 754 S.W.2d 279, 282 (Tex.App.—Texarkana 1988, writ denied) (statutory cap precludes any recovery of prejudgment interest when the total damages equal or exceed the maximum recovery).

The Rammings argue that the 1987 enactment of TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a) (Vernon Supp.1993) created a statutory right to prejudgment interest "as interest," which is not covered by the § 101.023 cap. They contend that § 101.023 merely limits money *damages* to $250,000 and does not purport to address interest *on* damages.

■ But § 101.023 does not merely set an upper limit on money damages. Properly read, § 101.023 states that the exclusive mode of potential State liability is in the form of money damages that do not exceed $250,000. If prejudgment interest "as interest" is viewed as money damages, then such interest is allowed so long as the statutory cap is not exceeded. In fact, the distinction between interest "as damages" and interest "as interest" has been abolished. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 553 (Tex.1985) (establishing a common law right to prejudgment interest on personal injury damages whether claimed as "interest" *per se* or as "damages measured by the legal rate of interest"). Therefore, we find that, while the Rammings may be awarded prejudgment interest under the Tort Claims Act, such award is subject to the statutory cap on total State liability. *See also Texas Dept. of Mental Health v. Petty*, 817 S.W.2d 707, 722 (Tex.App.—Austin 1991), *aff'd*, 848 S.W.2d 680 (1992) ("The word 'interest' is employed only for convenience in speaking of 'an *element of damages* necessary to the complete indemnity of the injured party.'") (emphasis in original).

The Rammings argue that the language of art. 5069–1.05, § 6(a) is mandatory. "Judgments in wrongful death, personal injury, and property damage cases *must* include prejudgment interest." Art. 5069–1.05, § 6(a) (emphasis added). They contend, therefore, that they have an absolute right to

prejudgment interest unrestricted by any limit under the Tort Claims Act. We disagree.

"[F]or the Legislature to waive the State's sovereign immunity, it must do so by clear and unambiguous language." *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980). In *University of Texas at Austin v. Hinton*, 822 S.W.2d 197 (Tex.App.—Austin 1991, no writ), the court applied this premise in holding that art. 5069–1.05, § 6(a) did not supersede § 101.023. *Id.* at 206. "In the absence of an explicit waiver of sovereign immunity by the legislature, we cannot impute to the [prejudgment interest] amendments such a waiver by implication." *Id.* The court also rejected the contention that *Cavnar*'s general rule allowing prejudgment interest on personal injury damages somehow overrode the Tort Claims Act limitation of liability. *Id.* The court stated:

> The supreme court has indicated ... that it will defer to the legislature's discretion on the issue of the waiver of sovereign immunity. *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). In any event, we will not infer such an abrogation when the supreme court simply states a general rule ... and does not expressly apply the rule to governmental units.

*Id.* at 205–06 n. 7.

The Rammings next contend that the same rationale that permits postjudgment interest to raise a Tort Claims Act award over the $250,000 cap applies to prejudgment interest. They cite us to our opinion in *Harris County v. Dowlearn*, 489 S.W.2d 140 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.) where we said:

> Section 11 [now § 101.107] of the Tort Claims Act provides that judgments recovered against units of government pursuant to the provisions of the Act shall be enforced in the same manner and to the same extent as judgments are now enforced against such units under the statutes and law of Texas. It is clear that the terms of TEX.REV.CIV.STAT.ANN. art. 5069–1.05 (1967) provide that tortfeasors are liable for interest on the amount of judgment from the date of judgment at the rate of six percent. And we believe it is clear

enough that units of government, prior to enactment of the Texas Tort Claims Act, were liable for interest on judgments against them.... The Texas Tort Claims Act does not negate the right to interest on judgments against the State, but on the other hand gives the right of enforcement to the same extent as applied to ordinary judgments.

*Id.* at 147 (citation omitted).

██ This postjudgment interest rationale does not apply to prejudgment interest. Postjudgment interest, by encouraging prompt payment of judgments, is an effective enforcement mechanism. And § 101.107 of the Tort Claims Act expressly provides that enforcement of judgments against governmental units will be as provided by other statutes and case law. *See* § 101.107. This provision is the express waiver of sovereign immunity contemplated in *Duhart. Duhart, supra.* However, prejudgment interest is not a judgment enforcement tool, and no such express statutory language addresses prejudgment interest as it relates sovereign immunity, either within the Tort Claims Act itself or in the prejudgment interest statute.

Finally, the Rammings argue that sound policy considerations exist to impose prejudgment interest against the State. Texas courts have long held that public policy favors settlement of lawsuits. *See, e.g., Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 4 (Tex.1986). The Rammings maintain that, just as postjudgment interest encourages prompt payment of judgments, so does prejudgment interest encourage settlements. However, the courts have also held that preserving governmental funds is a legitimate legislative goal. *See, e.g., Petty*, 817 S.W.2d at 721. We believe that such policy tradeoffs are best left for the legislature's consideration. *See Hinton*, 822 S.W.2d at 207. As the Texas Supreme Court has stated:

> Any waiver exposes governmental units to increased liability, the burden of which must eventually be born[e] by the general populace. In the Tort Claims Act, the Legislature has undertaken to address the difficult conflicting policies associated with a waiver of governmental immunity. We consider the Legislature better suited than

this Court to try to accommodate these policies, and therefore we continue to refuse to disturb the balance it has struck. *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813–14 (Tex.1993), *pet. for cert. filed* (1993).

We hold that the limitation on liability of § 101.023 operates to limit the total award of actual damages and prejudgment interest at $250,000. We sustain point six.

## V. Conclusion

In sum, we modify the judgment to (1) delete Mary Ramming's $250,000 award and (2) delete prejudgment interest.

Affirmed as modified.

(All Justices join in Parts I and III; CANNON and BOWERS, JJ., join in Part II; ROBERTSON and CANNON, JJ., join in Part IV; ROBERTSON, J., dissents on Part II; and BOWERS, J., dissents on Part IV).

BOWERS, Justice, concurring and dissenting.

I respectfully dissent to the majority's opinion holding that prejudgment interest is precluded because it exceeds the statutory limits for damages allowed by the Tort Claims Act. TEX.CIV.PRAC. & REM.CODE ANN. § 101.001, *et seq.* Because I agree that Mrs. Ramming is not entitled to a separate recovery for loss of household services and consortium, I address the issue of prejudgment interest only as it applies to Mr. Ramming's award.

The trial court awarded Mr. Ramming $250,000.00 and also awarded him prejudgment interest in the amount of $64,521.46. The State argues the trial court erred by allowing prejudgment interest, because it resulted in awarding an amount of damages over and above the statutory limit set by the Texas Tort Claims Act. The State, during oral arguments, conceded that appellees would be entitled to prejudgment interest if the addition of the interest did not result in the total damages exceeding the statutory limit of $250,000.00.

Prejudgment interest is not damages. A court does not determine the amount of prejudgment interest until after the fact finder has ascertained the amount of damages. Furthermore, the Texas Supreme Court has recognized a difference between prejudgment interest as damages and prejudgment interest as interest.

> [Appellant] had no statutory right to prejudgment interest, but rather sought such interest as an element of *damages* under common law.... Because the jury found damages in excess of $100,000, the liability limitation of the [Tort Claims] Act precludes the award of prejudgment interest as damages here.

*Weller v. State*, 682 S.W.2d 234 (Tex.1984) (emphasis added). When the Supreme Court issued its opinion in *Weller*, there was no statute providing for prejudgment interest. This is no longer the case; prejudgment interest is now a statutory right. "Judgments in wrongful death, personal injury, and property damage cases must include prejudgment interest." TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a).

The Legislature wrote art. 5069–1.05 after the Tort Claims Act and did not exclude the Tort Claims Act from prejudgment interest statute. I believe the Legislature intended the prejudgment interest statute, Art. 5069–1.05, to apply to judgments awarded under the Tort Claims Act.

Article 5069–1.05 applies certain restrictions to prejudgment interest. If a settlement offer is greater than the amount of judgment, or if the settlement offer is less than the amount of judgment, the act limits the accrual of the prejudgment interest. *Id.* at § 6(b), (c). The act requires that settlement offers be in writing to toll the running of the prejudgment interest. *Id.* at § 6(e). Obviously, the prejudgment interest sections of article 5069–1.05 were written to promote the settlement of lawsuits.

Texas courts have long held that public policy favors the settlement of lawsuits. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 4 (Tex.1986). This policy is equally important in cases involving the State and its citizens. Because the Tort Claims Act limits damages, absent prejudgment interest, the State has no motivation to settle a claim. Neither the *Stowers* Doctrine nor bad faith

can be used to nudge the State toward settlement and the more serious a claimant's damages are, the less motivation the government has to settle the case. For example, Mr. Ramming's medical bills alone exceeded $250,000.00. Under the damage limitation of the Tort Claims Act, the maximum the State will be required to pay is $250,000.00; therefore, the State has no incentive to settle the case.

Prejudgment interest should be treated the same as postjudgment interest. Postjudgment interest is not considered an element of damages. *Univ. of Tex. Med. Branch v. York*, 808 S.W.2d 106, 112 (Tex. App.—Houston [1st Dist.] 1991, writ granted). Because postjudgment interest is not an element of damages, the statutory cap for damages under the Tort Claims Act is not affected by an award of postjudgment interest. *Id.* at 112. This same rationale applies to the statutorily authorized prejudgment interest. I would hold that Mr. Ramming is entitled to prejudgment interest.

In addition, although I concur that this is not a premises liability case, I write separately to clarify one aspect of the issue I consider important for future reference. Even if this were a premises liability case, failure to submit the State's requested question would be harmless error. The State's proposed question was identical to the question submitted with the exception of four instructions. The proposed instructions detailed the State's negligence.

The first instruction, "a," asked if the condition of the highway posed an unreasonable risk of harm to a motor vehicle operator exercising ordinary care. The jury, by finding that the State was negligent and that the State's negligence was the proximate cause of the collision, found that the roadway posed an unreasonable risk of harm to a motor vehicle operator exercising ordinary care. The jury, by finding that Mr. Ramming was not negligent, found that Mr. Ramming exercised ordinary care.

Instruction "b" asked if the State had actual knowledge of the condition of the roadway. The parties do not dispute that the State had actual knowledge. The State created the condition and had knowledge of the condition at the moment it was created. Because this was not a disputed issue, a separate instruction was not needed.

Instruction "c" concerned Mr. Ramming's actual knowledge of the condition of the roadway; a contributory negligence instruction. Even though contributory negligence has been abolished in other types of cases, it still remains viable in premises liability cases. *Farley v. MM Cattle Company*, 529 S.W.2d 751 (Tex.1975). The jury, however, found Mr. Ramming not negligent.

Instruction "d" concerned the State's failure to adequately warn Mr. Ramming of the condition of the roadway and the State's failure to make the condition safe, within a reasonable time after notice of the condition. The State's failure to warn is an act of negligence and was included in the broad form question submitted to the jury. The State's failure to make the condition safe within a reasonable time after notice does not apply because by creating the condition, the State had notice of the condition.

The jury inherently answered the State's requested four instructions by finding the State negligent and the Rammings not negligent. Under the facts of this case, the State's proposed four instructions were answered by the jury in the broad form negligence question that was submitted, and failure to submit the four instructions was harmless error.

ROBERTSON, Justice, concurring and dissenting.

I respectfully dissent to the affirmance of the finding of liability. However, since the other two justices are in disagreement on the award of prejudgment interest, I concur in Justice Cannon's conclusion that the trial court judgment be modified to delete that award.

Appellee's Second Amended Petition, upon which trial was had, only alleged the following as actionable negligence:

Your Plaintiffs would show that it has become necessary to bring this lawsuit by reason of injuries and damages suffered by your Plaintiffs on the 20th day of September, 1988 arising out of a motor vehicle

collision at the intersection of FM 2004 and State Highway 332 in Lake Jackson, Brazoria County, Texas. Your Plaintiffs would show that on or about that date REINHARD RICHARD RAMMING was operating his motor vehicle in a reasonable and prudent manner in an easterly direction on State Highway 332. Your Defendant LISA ANN VACKAR[1] was operating her vehicle in a southerly direction on FM 2004. WILLIAM J. KILPATRICK, who at all times material hereto was acting within the course and scope of his employment as an agent, servant and/or employee of your Defendants THE STATE OF TEXAS and STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, was engaged in work on the traffic signals located at said intersection, checking the wiring and obtaining amperage readings on the wires in the traffic signal control box. In so doing he failed to properly inspect the wiring and dislodged the main wire which feeds the power to the traffic signals. The wire in question was loose, having been negligently installed, connected, maintained and/or inspected by agents, servants and/or employees of Defendant THE STATE OF TEXAS and STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION. At the time the main wire became dislodged, the traffic signals in question ceased to function properly to control traffic at the intersection at FM 2004 and State Highway 332. KILPATRICK failed to post any warnings or flagmen or otherwise advise the public of the work being performed before dislodging the main wire, nor did he do so after he dislodged the wire. Further, after dislodging the main wire he went to the breaker box and turned off the breaker, again without taking any steps to warn the traveling public. The above described acts and omissions on the part of KILPATRICK and the other agents, servants and/or employees or Defendant THE STATE OF TEXAS and STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION were negligent and constituted negligence, and were each and all a proximate cause of the occurrence in question. As a consequence thereof, a collision occurred at the intersection in which your Plaintiff REINHARD RICHARD RAMMING's vehicle was struck with great force and violence by the vehicle being operated by your Defendant LISA ANN VACKAR.

Your Plaintiffs would respectfully show that nothing REINHARD RICHARD RAMMING did or failed to do caused or in any way contributed to cause the occurrence in question. On the contrary, the collision in question and the injuries and damages suffered by your Plaintiffs were proximately caused by the negligence of your Defendants THE STATE OF TEXAS and STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION acting by and through their agents, servants and/or employees, as well as that of your Defendant LISA ANN VACKAR. Your Defendants THE STATE OF TEXAS and STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION are responsible to your Plaintiffs in damages under the doctrine of "respondeat superior" and pursuant to the Texas Torts Claims Act for the negligent acts and omission of KILPATRICK, as well as those of their agents, servants and/or employees who installed and/or maintained the control box and the wiring therein, and who negligently failed to properly secure the main wire in question. Further, your Defendants THE STATE OF TEXAS and STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, their agents, servants and/or employees, were negligent in creating, maintaining and in failing to warn of and remedy a dangerous condition, of which they knew or in the exercise of ordinary care should have known, which negligence was likewise a proximate cause of the occurrence in question.

Justice Cannon's opinion sets forth the negligence question submitted to the jury

1. Lisa Ann Vackar was non-suited prior to trial.

and appellant's requested instructions; thus there is no need to repeat them here.

Sovereign immunity to suit is waived and abolished only to the extent of liability *created* by the Tort Claims Act. Tex.Civ.Prac. & Rem.Code Ann. § 101.025 (Vernon 1986 and Supp.1993); *Mount Pleasant Ind. Sch. D. v. Lindburg,* 766 S.W.2d 208 (Tex.1989).

The majority opinion ignores the exemption of liability provided by § 101.060(a)(2). This section clearly states that this chapter, the waiver of sovereign immunity, does not apply to claims arising from the absence, condition, or malfunction of a traffic or road sign, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice. The accident between Mr. Ramming and Ms. Vackar occurred because the traffic signal was not functioning. The claim arose from the condition of the signal. The Rammings had no cause of action unless they met the requirements of § 101.060.

The majority correctly concludes that sections 101.022 and 101.060 establish the duty owed by the state to a plaintiff who sues under a premises liability claim involving a traffic signal. It is my belief that if the Rammings had a cause of action, it was for a premise defect. However, in order to recover for an ordinary premise defect, the claimant must prove: (1) a condition of the premises created an unreasonable risk of harm; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger, and (5) the owner's failure was a proximate cause of the injury. *State Dept. of Highways v. Payne,* 838 S.W.2d 235, 237 (Tex.1992). These findings cannot be deemed in the Rammings' favor because the state objected to the omission by requesting a jury instruction on the issues. *Id.* at 241.

The majority ignores the plain wording of 101.060 and concludes that it does not apply to the facts of this case. It reads into the statute language that is not there. If the majority did not add these additional requirements to 101.060, it could not affirm the trial court's judgment. The Rammings failed to state any other cause of action that would waive the state's immunity. The Rammings and the majority claim waiver occurred under § 101.021(2) alleging the accident was caused by a condition or use of tangible personal property. I disagree that the Rammings' injuries were the result of the *use* of tangible personal property or the suggested *failure* to use tangible personal property.

The judgment should be reversed and here rendered in favor of the state.

