*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 9**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SUNSTONE REALTY PARTNERS X LLC,
*Appellant,*

*v.*

BODELL CONSTRUCTION COMPANY,
*Appellee.*

No. 20230285
Heard December 13, 2023
Filed March 7, 2024

On Direct Appeal

Third District, Salt Lake County
The Honorable Robert P. Faust
No. 226909897

Attorneys:

Russell S. Walker, South Jordan, for appellant

Michael R. Johnson, Austin C. Nate, Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN, JUSTICE HAGEN, and JUSTICE POHLMAN joined.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 After arbitrating a dispute in Hawaii regarding construction defects in a condominium development, SunStone Realty Partners X LLC (SunStone) domesticated its Hawaii judgment against Bodell Construction Company (Bodell) in Utah. Bodell asked the district court to impose Utah's postjudgment interest rate instead of Hawaii's higher postjudgment rate. The district court complied with Bodell's request.

¶2    SunStone appeals, arguing that the Utah Foreign Judgment Act (UFJA) requires the court to apply the Hawaii postjudgment interest rate. *See* UTAH CODE § 78B-5-301 to -307. Failing that, SunStone contends that provisions in its contract with Bodell require Utah courts to award postjudgment interest at the Hawaii rate. SunStone further suggests that even if the contract does not mandate the Hawaii rate, principles of comity do.

¶3    Although the UFJA does not squarely address the issue, it does instruct Utah courts to treat a foreign domesticated judgment like a Utah judgment for purposes of enforcement. Postjudgment interest serves, at least in part, as an enforcement mechanism. Accordingly, the UFJA requires the imposition of Utah's postjudgment interest rate. We affirm.

## BACKGROUND

¶4    SunStone and Bodell arbitrated claims arising out of a construction dispute. The arbitration resulted in an award against Bodell that exceeded $9.5 million. A Hawaii court entered a judgment in favor of SunStone in that amount. SunStone subsequently domesticated that judgment in Utah under the UFJA.

¶5    Bodell promptly moved the Utah district court for an order imposing Utah's postjudgment interest rate and not Hawaii's.[1] In its motion, Bodell argued that the UFJA requires the application of Utah's rate. It reasoned that the UFJA provides that a foreign judgment domesticated in Utah is "subject to the same procedures, defenses, enforcement, satisfaction, and proceedings" as a Utah judgment, that postjudgment interest is properly considered a procedural matter, and therefore that Utah's postjudgment rate applies. SunStone opposed the motion, arguing that the UFJA's "general purpose" requires the application of Hawaii's rate. It further asserted that its contract with Bodell required the district court to apply the Hawaii rate.

¶6    Neither party requested a hearing on the motion, and the district court entered an order that contained no analysis of the issue, but simply stated "Utah's post judgment rate applies as of the date of the domestication of the foreign judgment in Utah." SunStone appeals.

---

[1] When SunStone domesticated the judgment, the Utah rate was 2.29%; the Hawaii rate was 10%.

## ISSUES AND STANDARDS OF REVIEW

¶7 SunStone presents three issues. It first argues that the district court erred when it failed to recognize that Hawaii's postjudgment rate should apply. SunStone posits the UFJA's "general purpose [is] to make . . . the law of" Utah uniform with states that have enacted the Uniform Enforcement of Foreign Judgments Act (UEFJA). (Citing UTAH CODE § 78B-5-307.) "We review questions of statutory interpretation for correctness, affording no deference to the lower court's legal conclusions." *Scott v. Benson*, 2023 UT 4, ¶ 25, 529 P.3d 319 (cleaned up).

¶8 SunStone next contends that the contract between it and Bodell requires the application of the Hawaii postjudgment rate. "We review a district court's interpretation of a contract for correctness." *Brady v. Park*, 2019 UT 16, ¶ 29, 445 P.3d 395.

¶9 SunStone last asserts that the Hawaii rate should apply as a matter of comity. When we apply "principles of comity, we have traditionally afforded the district court broad discretion." *Galindo v. City of Flagstaff*, 2019 UT 67, ¶ 6, 452 P.3d 1185 (cleaned up). However, "[w]e initially presume comity should be extended" unless the party shows that "the extension of comity contravenes or undermines Utah's public policy." *Id.* ¶¶ 11–12 (cleaned up). But when there is legislative guidance on an issue, the question is "removed . . . from the realm of comity." *Pan Energy v. Martin*, 813 P.2d 1142, 1146 (Utah 1991).

## ANALYSIS

### I. THE UTAH FOREIGN JUDGMENT ACT REQUIRED THE DISTRICT COURT TO APPLY UTAH'S POSTJUDGMENT INTEREST RATE

¶10 SunStone first argues that the Hawaii rate applies "based on Utah's enactment of the" UEFJA.[2] SunStone points to the provision in the UFJA that discusses a "general purpose to make uniform the law of those states which enact it." UTAH CODE § 78B-

---

[2] As its name suggests, the Uniform Enforcement of Foreign Judgments Act is a uniform act. Forty-eight states have adopted some version of it. Michigan, Missouri, Oregon, and Washington expressly provide that postjudgment interest should be assessed at the rate of the state that issued the judgment. *See* MICH. COMP. LAWS § 691.1176; MO. REV. STAT. § 511.760(14); OR. REV. STAT. § 24.140; WASH. REV. CODE § 6.36.140. Utah has not enacted a similar provision.

5-307. SunStone asserts that "the only way to achieve that uniformity among the various states under the UEFJA is to apply the post-judgment rate of the [rendering state]."

¶11 "The aim of statutory interpretation is to ascertain the intent of the legislature, and the best evidence of the legislature's intent is the plain language of the statute itself." *Scott v. Benson*, 2023 UT 4, ¶ 37, 529 P.3d 319 (cleaned up). This process does not look at statutory language in isolation; instead, "each section must be read in the context of the entire [a]ct." *Savely v. Utah Highway Patrol*, 2018 UT 44, ¶ 25, 427 P.3d 1174 (cleaned up). And when the language of a statute is plain, we will not turn to a "statute's purposes in hopes of finding a gloss to put on the text." *Scott*, 2023 UT 4, ¶ 43 n.13.

¶12 The UFJA provides a means of domesticating a foreign judgment and identifies how Utah courts must treat these domesticated judgments. Although the UFJA does not specifically address the question of postjudgment interest, subsection 78B-5-302(3) supports the district court's conclusion.

¶13 Subsection 78B-5-302(3) of the UFJA mandates that foreign judgments domesticated using the UFJA are "subject to the same procedures, defenses, enforcement, satisfaction, and proceedings . . . as a judgment of a district court of this state."[3] Rather than determine, as SunStone urges, whether imposing the Hawaii postjudgment rate serves the UFJA's general purpose, we start by asking whether postjudgment interest is one of the procedures, defenses, enforcement mechanisms, satisfactions, or proceedings that the UFJA instructs us to resolve with Utah law.

¶14 The United States Supreme Court has recognized that postjudgment interest serves "to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damages and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (cleaned up). The Seventh Circuit Court of Appeals has further explained that postjudgment interest is not

---

[3] Bodell also points to subsection (2), which specifies that the "clerk of the district court shall treat the foreign judgment in all respects as a judgment of a district court of Utah." UTAH CODE § 78B-5-302(2). But because subsection (3) of the UFJA controls, we need not turn to this provision.

meant to "punish a defendant but to encourage prompt payment and compensate a plaintiff for another party's use of its money." *Overbeek v. Heimbecker*, 101 F.3d 1225, 1228 (7th Cir. 1996). In other words, postjudgment interest acts as "an enforcement tool to ensure that . . . the award of just compensation will not be diminished by delay in payment." *Brown v. Habrle*, 1 A.3d 401, 405 (Me. 2010) (cleaned up).

¶15   Unlike prejudgment interest, the postjudgment rate would have no effect on the judgment amount should a debtor decide to immediately pay the judgment creditor. *See Aqua Mgmt., Inc. v. Abdeen*, 227 P.3d 498, 502 (Ariz. Ct. App. 2010). Instead, postjudgment interest serves, at least in part, as "an enforcement mechanism designed to encourage timely satisfaction of the judgment." *Id.*

¶16 Other states see it the same way. For example, the Pennsylvania Superior Court was asked to determine whether postjudgment interest was a matter of substantive or procedural law. *See Lockley v. CSX Transp. Inc.*, 66 A.3d 322, 326 (Pa. Super. Ct. 2013). It concluded that postjudgment interest was procedural because it is a "method by which rights . . . are enforced." *Id.* at 327 (cleaned up). It further reasoned that postjudgment interest "does not create a substantive right" because "the amount to which the plaintiff is entitled has already been resolved" by the judgment. *Id.* at 326–27.

¶17 The Arizona Court of Appeals has similarly held that "post-judgment interest . . . is generally collateral to the underlying judgment." *Aqua Mgmt., Inc.*, 227 P.3d at 502. It explained that postjudgment interest "is merely an enforcement mechanism designed to encourage timely satisfaction of the judgment," not a part of the substantive judgment. *Id.*

¶18 For its part, a Texas Court of Appeals has opined that postjudgment interest can be awarded in claims against the government beyond the $250,000 limit set by the Texas Tort Claims Act. *Tex. Dep't of Transp. v. Ramming*, 861 S.W.2d 460, 469 (Tex. App. 1993), *writ denied* (Feb. 23, 1994). The court concluded that postjudgment interest could exceed the limit because "by encouraging prompt payment of judgments, [postjudgment interest] is an effective enforcement mechanism." *Id.*

¶19 SunStone argues that postjudgment interest is a substantive part of the judgment and not an enforcement mechanism. In support of this argument, it claims that this court,

in *Gressman v. State*, "held that statutory provisions affecting post-judgment interest affect substantive rights because they 'enlarge, eliminate, or destroy vested or contractual rights.'" (Quoting 2013 UT 63, ¶ 14, 323 P.3d 998.) SunStone misreads *Gressman*.

¶20 In *Gressman*, we considered whether a statutory amendment affected vested rights, requiring us to apply the version of the statute before it was amended. *Id.* ¶¶ 13–14. The amendment "foreclose[d] postjudgment interest for financial assistance payments and cut off such payments altogether" for certain judgments following factual innocence claims. *Id.* ¶ 14. We held that the amended provisions were substantive because they affected vested rights and did "not merely dictate the practice and procedure or the legal machinery by which the substantive law is determined or made effective." *Id.* (cleaned up). SunStone would have us ignore that *Gressman* rested its conclusion on the elimination of both postjudgment interest and the underlying judgment, and not on a characterization of postjudgment interest generally.[4] *See id.*

¶21 Because postjudgment interest is an enforcement mechanism, the UFJA requires us to look to Utah law. *See* U<small>TAH</small> C<small>ODE</small> § 78B-5-302(3). The district court did not err when it concluded that Utah's postjudgment rate applies under the UFJA.

## II. THE PARTIES' CONTRACT DID NOT REQUIRE THE DISTRICT COURT TO APPLY THE HAWAII POSTJUDGMENT INTEREST RATE

¶22 SunStone also contends that provisions in the parties' construction contract required the imposition of the Hawaii postjudgment interest rate and that the district court erred when it failed to recognize that requirement. SunStone explains that the parties agreed in the contract that proceedings would "be conducted in the State of Hawaii" and that the contract would be "governed by the law of the place where the project is located [Hawaii]." SunStone also avers that the contract provided that "[p]ayments . . . shall bear interest . . . at such rate as the parties

---

[4] The question is not before us, so we need not address it, but in the interest of clarity we note that we can envision circumstances where postjudgment interest is specifically awarded in a judgment that a party subsequently domesticates in Utah. That would present a different circumstance than the judgment SunStone domesticated, which did not include a specific postjudgment interest rate.

may agree upon in writing or . . . at the legal rate prevailing . . . at the place where the project is located."

¶23 When parties to a contract have agreed to apply the law of a foreign state to govern disputes, generally that agreement "would only apply to the substantive law governing the dispute." *See Trillium USA, Inc. v. Bd. of Cnty. Comm'rs*, 2001 UT 101, ¶ 14, 37 P.3d 1093. In other words, non-substantive matters or "matters of procedure" are governed by the law of the forum. *Id.* (cleaned up).

¶24 As discussed, postjudgment interest is generally a mechanism to enforce a judgment. *Supra* ¶¶ 14–18; *cf. Baker v. Gen. Motors Corp.*, 522 U.S. 222, 235 (1998) ("Enforcement measures do not travel with the sister state judgment as preclusive effects do . . . ."). Where a foreign judgment is domesticated in Utah and the judgment itself does not specify a postjudgment rate, the choice to apply Utah's postjudgment interest statute is a question of procedure. *See AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 291 n.2 (Utah 1986) ("A procedural statute . . . relates to the means and procedures for enforcing [substantive] rights."). Therefore, the contract's choice of law provision does not dictate the postjudgment rate.

¶25 We take SunStone's point that the parties could have agreed to a postjudgment interest rate in their contract. *See* UTAH CODE § 15-1-4(2)(a). But the interest provision SunStone relies on does not speak to postjudgment interest. The contract sets the interest rate only for "Payments due and unpaid under the Contract Documents." There is no mention anywhere within the document of an interest rate on a judgment. SunStone argues that the general interest provision relating to payments should extend to the judgment obtained for construction defects.

¶26 We have not allowed parties to transmogrify an unrelated interest rate clause into an expression of agreement on a postjudgment interest rate. This court has explained that an agreement to a particular interest rate in a contract will only apply to a judgment award "if the parties agreed that the interest rate would apply to the contractual obligation that forms the basis for the judgment." *Brady v. Park*, 2019 UT 16, ¶ 104, 445 P.3d 395. Put differently, for a district court to impose a non-statutory postjudgment rate, it must be "contractually linked" to the obligation. *See id.*

¶27 In *Brady*, we determined that an agreement to a ten percent interest rate on the repayment of a loan does not extend to a

judgment to recover overpayments on that loan. *Id.* ¶ 105. We reasoned that the parties "did not contemplate the possibility of loan overpayments," nor did they "agree upon an interest rate that would attach to" a judgment award for overpayments. *Id.*

¶28 Here, the arbitration award underlying the judgment is based on claims for construction defects. This has no reasonable relation to the parties' agreement to an interest rate for "payments due" under the contract. There is no indication that the parties agreed to an interest rate that would apply to a judgment award for construction defects. Nor did the parties agree to an interest rate that would attach to a judgment generally. In the absence of such an agreement, we default to the UFJA. The district court did not err when it applied Utah's postjudgment rate.

### III. WE DO NOT CONSIDER PRINCIPLES OF COMITY BECAUSE THE UFJA MANDATES A RESULT

¶29 SunStone last argues that the district court should have applied the Hawaii postjudgment interest rate as a matter of comity. We have explained that comity "is the principle that a court, for considerations of public policy, should defer to a court of another jurisdiction . . . and is a matter that calls for the exercise of judicial discretion." *Pan Energy v. Martin*, 813 P.2d 1142, 1146 (Utah 1991). But when an issue is addressed by statute, it is "removed . . . from the realm of comity." *Id.* Because the UFJA subjects foreign judgments filed under the UFJA to the same enforcement as local judgments, the Legislature has already decided how we resolve the question, and we may not use notions of comity to avoid the result the statute requires.[5] *See id.*

### CONCLUSION

¶30 The district court did not err when it concluded that Utah's postjudgment interest rate applies to the Hawaii judgment

---

[5] SunStone raises a number of interesting and important policy considerations. Perhaps most compelling is SunStone's assertion that the UFJA's purposes could best be promoted through the application of the postjudgment interest rate of the state that renders the judgment. These are arguments best addressed to the Utah Legislature, which might decide to join Michigan, Missouri, Oregon, and Washington on the list of states that have deviated from the uniform act to mandate that the postjudgment interest rate of the rendering state applies.

SunStone domesticated in Utah using the UFJA. Indeed, the Utah Foreign Judgment Act requires that result. The district court also did not err when it rejected SunStone's claim that the construction contract required the application of Hawaii's postjudgment rate. Moreover, general principles of comity cannot override the result that the statute dictates. We affirm.

——————