· **Tammie Rene CAIN a/k/a Tammy Cain, Appellant,**

v.

**TIMBERWALK APTS. PTNR, INC., et al., Appellees.**

**No. 14–95–00050–CV.**

Court of Appeals of Texas, Houston, (14th Dist.).

March 13, 1997.

Rehearing Overruled April 24, 1997.

Thomas M. Stanley, Houston, for appellant.

Thersa A. Carver, Wayne Adams, David E. Lueders, Houston, for appellees.

Before YATES, HUDSON and FOWLER, JJ.

## OPINION

FOWLER, Justice.

This is an appeal by appellant, Tammy Cain ("Cain") from a jury verdict in favor of appellees, Timberwalk Apartments Partners, Incorporated; Timberwalk Apartments, Limited; ("Timberwalk"); and Sovereign National Management, Incorporated; doing business as Sovereign/LBI ("Sovereign"); in a premises liability case involving third party criminal acts. The jury found in favor of the appellees and the trial court rendered a take nothing judgment. Cain brings seven points of error complaining (1) the trial court erred in not submitting the proper negligence theory; (2) the trial court imposed a higher burden of proof on Cain than required by law; (3) the trial court submitted an improper instruction concerning a landlord's duty to repair or remedy a condition; (4) the trial court's erroneous instructions and definitions effectively constituted a comment on the evidence; (5) the trial court erred in not declaring a mistrial; and (6) the trial court erred in not granting appellant's motion for new trial. We reverse and remand because the court submitted an improper definition for negligence.

## FACTS AND PRIOR POSTURE

On January 26, 1992, Tammy Cain was sexually assaulted in her residence at the Timberwalk apartments. Cain filed suit against Timberwalk, the owners of the apartments, and Sovereign, the management company for the apartments. Although Cain pleaded two separate theories of recovery, negligence and violations of the Deceptive Trade Practices Act, the only issue before us is negligence. Cain alleged that Timberwalk and Sovereign failed to provide "proper routine security surveillance," and failed to adequately maintain security measures, including access gates, alarm systems, and sliding glass doors.

Cain and her roommate, Phyllis Scott ("Scott"), and Scott's daughter, lived in an apartment leased from Timberwalk. On the night of January 26th, Cain was home alone, watching television. Peter Saenz, another Timberwalk resident, entered Cain's apartment and raped her.

Cain argues that if the jury had been properly charged, there was sufficient evidence to support a jury finding that Timberwalk and Sovereign were negligent. Cain offered the testimony of several witnesses to support her claim that because of appellees' negligence, Saenz's criminal acts were foreseeable, and that their negligence proximately caused her injuries. Joyce Weatherford, Timberwalk's property supervisor and a Sovereign employee, testified that the apartment complex consisted of 300 units on both sides of a street. The complex began installing access gates to the premises in March of 1984, and finished the project in August 1985. Weatherford admitted that before January 1992, Timberwalk knew of problems with sliding glass doors in the apartments, and was aware of incidents in which intruders broke into apartments by removing the doors from their tracks. Sovereign's management installed precautionary "charley" bars on the sliding glass doors in some of the Timberwalk apartments, and had considered installing the bars in all its properties. Weather-

ford testified that the apartment manager had the duty to issue alarm codes to the tenants for their apartments, and that without the code, the alarm is useless. Finally, Weatherford stated that even though the written notice requirement was not enforced, the tenant's lease required the tenants to notify the landlord of a problem in writing. However, Weatherford admitted that tenants were welcome to call the office to notify them of a problem, and recognized that a tenant had no opportunity to negotiate any of the terms of the lease.

Eileen Subinsky, president of Sovereign, testified that Sovereign's 1991 budget indicated the south section access gates at Timberwalk had been out of operation for some period of time. Subinsky admitted this condition posed an opportunity for liability, and further conceded the access gates were not working when the rape occurred.

Phyllis Scott, appellant's roommate, testified that the access gates on the side of the complex where she resided with Cain were not operational. Scott called the manager's office three times to ask that the south gates be repaired, and management assured her that the gates would be repaired "soon." After her third call, Scott asked to be moved to the side of the complex on which the gates worked, but was informed there was a six month waiting list for those apartments. Scott further testified that management did not give her any information about the burglar alarm in their apartment, nor did she receive an alarm code.

Officer William Hastings of the Katy police office testified that after the assault he lifted fingerprints from Cain's patio door at the request of Scott's boyfriend. He stated Saenz's prints were located four to four and one-half feet off the ground, indicating to him that the door had been pushed up and then opened. In his opinion, the prints would not have been in that location had the door been unlocked. Hastings testified that one of the most common means of breaking into an apartment was through sliding patio doors being pushed up and opened.

Although there was conflicting evidence as to whether appellant had locked the sliding door the night of the assault, Cain testified at trial that she locked the door that night.

Jack Barbour, Cain's expert witness, testified that Timberwalk's access gates were inoperable the night of the assault, the pedestrian walk gates had been left open by management, and that security patrols of the premises were very rare during the hours in which rapes typically occur. He stated that because few assailants remain in an area when an alarm goes off, a properly functioning intrusion alarm would have greatly reduced the possibility of Saenz's assault on appellant. In Barbour's opinion, the security measures at Timberwalk were inadequate because there was no controlled access, only one security officer was on site, the apartment's intrusion alarm did not work, and there was no charley bar on the sliding glass doors.

After hearing this evidence and reviewing the charge, the jury found that Cain was the sole proximate of the rape and assessed no damages against Timberwalk or Cain.

## POINTS OF ERROR

In her first five points of error, Cain complains the trial court committed reversible error by only charging the jury on the theory of premises liability, and not on a general negligence theory. Cain argues that she pleaded a theory of negligence against Timberwalk and Sovereign for failure to provide adequate, reasonable security, and the evidence supported her theory. She also asserts that the court's definition of negligence did not allow the jury to consider whether Timberwalk and Sovereign failed to use ordinary care in providing adequate security measures to protect their tenants against reasonably foreseeable criminal acts of third parties. Finally, Cain contends the wording of the charge so limited the scope of the jury's inquiry, that it could not consider whether Timberwalk and Sovereign failed to (1) employ an adequate number of security guards; (2) maintain an adequate number of patrols during high crime periods; and (3) provide Cain with an alarm code.

■ The trial court has great discretion in submitting the jury charge. *Texas Dept.*

*of Transp. v. Ramming,* 861 S.W.2d 460, 463 (Tex.App.—Houston [14th Dist.] 1993, writ denied). This discretion, however, is subject to the requirement that the questions submitted must control the disposition of the case, be raised by the pleadings and evidence, and properly submit the disputed issues for the jury's deliberation. *Id.* Texas jurisprudence prefers broad-form submission of jury questions. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 266 (Tex.1992); *see also* TEX. R.CIV.P. 277. In this case, the trial court submitted the following broad-form question to the jury:

### Question No. 1

Was the negligence, if any, of the following a proximate cause of the occurrence in question?

Answer "yes" or "no" as to each of the following:

A. Timberwalk Apts./(present owner)    Answer: No .

B. Sovereign    Answer: No .

C. Tammie Cain    Answer: Yes.

The trial court also gave the jury the following definition of negligence for Timberwalk and Sovereign:

> "Negligence" with respect to Timberwalk and Sovereign means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm *created by a premises condition* which the owner or occupier knows about or in the exercise of ordinary care should know about.

> "Ordinary care," when used with respect to Timberwalk and Sovereign means that degree of care which would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.

In addition, the court gave the jury one instruction, which reads as follows:

> You are instructed that a landlord shall make a diligent effort to repair or remedy a condition if the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid and the condition materially affects the physical health or safety of an ordinary tenant. The tenant's notice must be in writing only if the tenant's lease is in writing and requires written notice.

During deliberations the jury sent the following note to the judge: "Question: In the instructions is this the law we are supposed to go by pertaining to the contract—or a general guideline?" Over the objection of Cain's counsel, the judge responded, "Ladies and gentlemen of the jury, I cannot specifically answer your question as it is framed other than to tell you to refer back to the instructions that are contained in the court's charge."

At trial and on appeal, Cain objects to the definition of "negligence" and the instruction contained in the charge. Cain argues that under the submitted charge, the definition and instruction limited the jury's consideration of appellees' duty to the duty to repair a condition on the premises, and did not include the duty to take precautions to prevent foreseeable criminal acts of a third party. Cain also argued that the definition was so restrictive that it could "be argued to not extend to or include any security measures." This limitation would effectively eliminate appellant's contentions that (1) Timberwalk and Sovereign had a duty to supply those security measures, and (2) appellees did not properly provide those measures.

■■ We review charge error under an abuse of discretion standard. *Penick v. Christensen,* 912 S.W.2d 276, 287 (Tex. App.—Houston [14th Dist.] 1995, writ denied). If we find an error in the charge, we then review the pleadings, evidence, and entire charge to determine if the error is harmful. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). To reverse a judgment based on error in the charge, appellant must establish the error was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. TEX.R.APP.P. 81(b)(1).

■■ The court gave the jury a negligence definition that has been approved for use in the most common of premises liability cases, the slip and fall case. *Keetch,* 845 S.W.2d at 266. Cain, however, argues that a negligence definition used for a specific type

of negligence case, a slip and fall, is inappropriate in this case. She contends a general negligence definition should have been submitted to the jury, and cites as authority *Centeq Realty Inc. v. Siegler,* 899 S.W.2d 195 (Tex.1995); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex.1985); *Haight v. Savoy Apartments,* 814 S.W.2d 849 (Tex. App.—Houston [1st Dist.] 1991, writ denied); and *Walkoviak v. Hilton Hotels Corp.,* 580 S.W.2d 623 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).[1] These cases involve suits against premise owners by persons who have been injured on their property as a result of criminal acts of third parties. The cases recognize the general rule that a defendant has no duty to prevent the criminal acts of a third party who does not act under the defendant's supervision or control. *Centeq Realty,* 899 S.W.2d at 197; *Nixon,* 690 S.W.2d at 549–550; *Haight,* 814 S.W.2d at 853. However, these authorities also recognize that a landowner or apartment manager *has a duty* to use ordinary care to protect against an unreasonable and foreseeable risk of harm from the criminal acts of third parties. *Centeq Realty,* 899 S.W.2d at 197; *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993); *Haight,* 814 S.W.2d at 853; *Truong v. Sears Roebuck & Co.,* —— S.W.2d ——, 1997 WL 109841 (Tex.App.—Houston [1st Dist.] Dec. 12, 1996).

■ We find the definition of negligence given to the jury was erroneous. We further find that when the contested definition is read in conjunction with the instruction concerning a landlord's duty to repair, it improperly limits the scope of the jury's inquiry. This limitation probably kept the jury from considering the gravamen of Cain's complaint, that the apartment complex had a

duty to, but did not, provide adequate security measures to protect its tenants. The very heart of Cain's complaint against Timberwalk and Sovereign at trial and on appeal is her allegation that appellees' security measures were inadequate.[2] This error was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. TEX.R.APP.P. 81(b)(1).

Timberwalk argues that Cain's authorities are distinguishable because they "involve plaintiffs who were victims of criminal activity in the common areas of the properties in 'question.'" We do not agree that the common area versus private area distinction controls the question of duty in this case.

Timberwalk also argues that the evidence showed that *Cain's* negligence, and not that of Timberwalk and Sovereign caused Cain's injuries. Timberwalk contends the jury found Cain's injuries were proximately caused by (1) her failure to activate her apartment alarm and (2) her failure to lock her patio door. We find conflicting evidence on these issues. Consequently, we have no way of knowing what the jury thought proximately caused Cain's injuries. Furthermore, even if the jury believed Cain left her door unlocked or did not take steps to activate the apartment alarm, the jury still should have been allowed to consider (1) whether the apartments' security measures were inadequate; (2) whether they caused appellant's injuries and; (3) if the measures were inadequate, how responsible Timberwalk and Sovereign were for Cain's injuries?

■ Timberwalk and Sovereign finally argue that because they did not have any previous security problems, and because Cain was the first of several victims attacked by the

1. Cain submitted the following definition for negligence: "'NEGLIGENCE' means failure to use ordinary care; that is to say, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances."

2. We express no opinion as to whether the definition for "negligence" that Cain submitted to the trial court was appropriately worded. *Compare Cain v. Cain,* 870 S.W.2d 676 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (holding that

general negligence definition was appropriate in a premise liability case involving a third party criminal act). Based on recent Texas Supreme Court cases interpreting rules 273 and 274 of the Texas Rules of Civil Procedure, we are of the opinion that Cain properly preserved error by the precise objections she presented to the trial court, which raise the same complaints she raises on appeal. *Alaniz v. Jones & Neuse, Inc.,* 907 S.W.2d 450, 451 (Tex.1995); *Spencer v. Eagle Star Ins. Co. of America,* 876 S.W.2d 154, 156–158 (Tex.1994).

rapist, they could not have foreseen this assault. To counter this argument, Cain introduced evidence of eleven sexual assaults within a one mile radius of the Timberwalk apartment complex, and Barbour, Cain's expert, testified that the security measures at the complex were inadequate. This testimony is sufficient to raise an issue on foreseeability. *See Nixon,* 690 S.W.2d at 551; *Haight,* 814 S.W.2d at 853.

We agree with appellant that the trial court did not properly submit Cain's negligence theory. We find the trial court erred in failing to properly submit appellant's negligence theory to the jury. This error was reasonably calculated to cause, and probably did cause the rendition of an improper judgment. We sustain Cain's first point of error.

In point of error three, Cain asserts that the trial court erred in submitting the instruction concerning a landlord's duty to repair or remedy a condition. The instruction reads as follows:

> You are instructed that a landlord shall make a diligent effort to repair or remedy a condition if the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid and the condition materially affects the physical health or safety of an ordinary tenant. The tenant's notice must be in writing only if the tenant's lease is in writing and requires written notice.

 At trial and on appeal, Cain argues the trial court erred in submitting this instruction because, like the negligence definition, it limited the landlord's duty to the duty to repair a condition and did not include the duty to take precautions to prevent foreseeable criminal acts of a third party. Cain renewed her objections to the instruction when the jury asked the judge to explain to them the significance of the instruction.

 We agree that the instruction, which is taken directly from the Property Code, was inappropriate. *See* Tex.Prop.Code Ann. § 92.052 (Vernon 1996). When coupled with the definition of negligence, it probably led the jury to not consider the gravamen of Cain's complaint: that the apartment complex had a duty to, but did not, provide adequate security measures to protect Cain. As with the negligence definition, we find this error was reasonably calculated to cause and probably did cause rendition of an improper judgment in this case. Tex.R.App.P. 81(b)(1).

Because of our disposition of appellant's first and third points, we need not address the remaining points of error. We reverse the judgment of the trial court and remand the case for a new trial.