TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00469-CV






Allan Construction Co., Inc., and William N. Allan, III, Appellants



v.



Dahlstrom Corporation, Jack H. Dahlstrom and Gay Dahlstrom, Appellees






FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. 95-0500, HONORABLE DON B. MORGAN, JUDGE PRESIDING 






 This appeal arises out of a suit by appellees Dahlstrom Corporation, Jack H. Dahlstrom
and Gay Dahlstrom (collectively "Dahlstrom") for specific performance on a contract by appellants Allan
Construction Company, Inc. and William N. Allan (collectively "Allan"). Following a jury trial, the district
court rendered judgment in favor of Dahlstrom, modified the agreement, and ordered the parties to
specifically perform. Allan appealed. We will modify the trial court's order and affirm it. 


BACKGROUND


 Allan and Dahlstrom were both highway construction contractors in Texas. In 1985,
following financial difficulties, Dahlstrom borrowed $550,000 from Allan in exchange for a promissory note
secured by real estate located in Hays County, Texas. Allan also advanced almost $3,300,000 on highway
jobs on behalf of Dahlstrom, and Jack and Gay Dahlstrom personally guaranteed the repayment of this
debt. 

 In 1989, Allan sued Dahlstrom for the payment of the two debts. Then in 1990, Dahlstrom
sued Allan to enjoin foreclosure of the lien securing the $550,000 note. They settled the lawsuits in 1991
and signed a written settlement agreement (the "1991 Agreement"). Under the 1991 Agreement: (1)
Dahlstrom executed a promissory note in favor of Allan for $3,150,000 secured by a deed of trust covering
an undivided one-half (1/2) interest in 1,931 acres of land in Hays County (the "Family Ranch") and in
1,050 acres of land in Llano and Blanco Counties; (2) Dahlstrom transferred to Allan a 1975 note and
deed of trust in an amount of $150,000 (the "equitable note") secured by lands in Hays County, including
a 115-acre tract (1) and a 170-acre tract; and (3) Allan would receive 90%, and Dahlstrom 10%, of the net
proceeds of a claim they had against the Texas Turnpike Authority, and Allan's net proceeds would offset
against the $3,150,000 note executed by Dahlstrom. Following the agreement, notices of lis pendens
describing the 1,050 acres in Llano County, the 115-acre tract, and the Family Ranch were filed by Allan
and John M. Killian. (2) 

 In 1994, during the trial of the Turnpike case, Dahlstrom and Allan agreed to modify the
1991 Agreement in conjunction with the settlement of the lawsuit against the Turnpike Authority for
$1,500,000. The modified agreement (the "1994 Agreement") allowed Allan to receive all of the net
proceeds from the settlement with the Turnpike Authority which amounted to $1,185,000. This amount
was credited toward Dahlstrom's note for $3,150,000. Secondly, under the 1994 Agreement, Dahlstrom
could convey to Allan the 1,050-acre tract in Llano County and the 115 acres in Hays County, on or
before April 18, 1995, in lieu of payment of the notes. However, if Dahlstrom failed to convey title to the
two properties by April 18, 1995, Allan could enforce the 1991 notes and deed of trust liens on all four
properties involved in the 1991 Agreement without reimbursing Dahlstrom for the additional amounts
obtained by Allan through the settlement of the Turnpike lawsuit. 

 Dahlstrom did not convey title to the properties by April 18, 1995. On April 19, 1995,
Allan demanded payment of the full amount of the $3,150,000 note from 1991 and threatened to begin
foreclosure proceedings, pursuant to the 1991 deed of trust. Dahlstrom filed the present suit to enjoin
Allan's foreclosure of the 1991 deed of trust and to obtain specific performance of the 1994 Agreement. 
The trial court, based upon the jury's findings, granted judgment in favor of Dahlstrom. The court held that
on April 18, 1995, Dahlstrom was ready, willing, and able to deliver good and marketable title to the 115-acre tract and the 1,050 acres, free and clear of all encumbrances, but was prevented from doing so by
Allan. Allan appeals. 


 DISCUSSION


 In its first and second points of error, Allan contends there is neither legally nor factually
sufficient evidence to support the finding that Dahlstrom was ready, willing, and able to deliver good and
marketable title to the 115-acre tract and the 1,050 acres, free and clear of all encumbrances, but was
prevented from doing so by Allan. In deciding a no-evidence point of error, we must consider only the
evidence and inferences tending to support the finding of the trier of fact and disregard all evidence to the
contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan Auto
Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than a scintilla of
evidence supports it. Crye, 907 S.W.2d at 499; Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752,
755 (Tex. 1970); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a
finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved
in the particular case. Crye, 907 S.W.2d at 499; Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25
(Tex. 1994); City of Stephenville v. Texas Parks & Wildlife Dep't, 940 S.W.2d 667, 672 (Tex.
App.--Austin 1996, writ denied). 

 When reviewing a jury's verdict to determine the factual sufficiency of the evidence, we
must consider and weigh all the evidence, both in support of and contrary to the finding, and should set
aside the judgment only if, after reviewing the entire record, the challenged finding of fact is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986); In Re King's Estate, 244 S.W.2d at 661; City of Stephenville, 940 S.W.2d at
672. The jury's finding must be upheld unless it is so against the great weight and preponderance of the
evidence as to be manifestly unjust or erroneous. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986). We are not free to substitute our judgment for the jury's simply because we may disagree with the
verdict. Herbert v. Herbert, 754 S.W.2d 141, 142 (Tex. 1988). 

 Taken in the light most favorable to the trial court's findings, the evidence reveals the
following. Before Dahlstrom could convey title to the 1,050-acre tract to Allan, two liens against the
property needed to be removed. The first lien was held by Allan, created by the 1991 deed of trust, which
he was obligated to release under the 1994 Agreement when Dahlstrom delivered title to him. The second
lien was an estate tax lien in favor of the Internal Revenue Service ("IRS") which was created by operation
of law when Gay Dahlstrom's father died, holding the 1,050-acre tract as part of his estate. (3) The IRS
agreed in January or February of 1995 to release its lien against the 1,050-acre tract in exchange for
Dahlstrom granting it a lien on the Family Ranch. With the IRS agreement to release its lien, Dahlstrom only
had to perform his agreement with the IRS and, pending Allan's release of his lien, convey clear title to
Allan in satisfaction of the 1994 Agreement with respect to the 1,050-acre tract. Allan and Killian,
however, still held their lis pendens, which they refused to release, on both the 1,050-acre tract and the
Family Ranch. Without the release of the lis pendens to the Family Ranch, Dahlstrom could not perform
its agreement with the IRS and, therefore, was prevented from conveying clear title on the 1050 acres to
Allan. 

 The 115-acre tract had nine liens which had to be removed before Dahlstrom could convey
clear title to Allan. As with the 1,050-acre tract, Allan held the first lien and was bound under the 1994
Agreement to release it. The second lien was in favor of the FDIC, created to secure a bank note. The
seven remaining liens were judgment liens in favor of Dahlstrom Corporation creditors. By February 1995,
four of the judgment creditors' liens had been satisfied. In January of 1995, Cecilia Austin, Jack
and Gay Dahlstrom's daughter, purchased the FDIC's lien. She then offered to either foreclose it herself
and transfer the property to Allan on behalf of Dahlstrom or to transfer the lien to Allan, allowing it to
foreclose on the property. In either event, foreclosure of the FDIC lien would have extinguished the three
remaining inferior liens. (4) Dahlstrom made repeated attempts to learn how Allan desired Austin to clear the
superior FDIC lien; however, Allan would not respond. 

 The evidence also shows Allan and Killian attempted to prevent Dahlstrom's performance
of the 1994 Agreement. William Allan testified that he was aware that he or Allan Construction might be
required to help Dahlstrom clear the titles to the two properties. However, neither Allan nor Killian ever
released the two lis pendens on the Family Ranch when asked to do so to allow Dahlstrom to complete
his agreement with the IRS. Additionally, Killian testified that he was trying to prevent the 1994
Agreement. Killian personally contacted several of Dahlstrom's judgment creditors to represent them in
foreclosing their liens in an attempt to prevent the performance of the 1994 Agreement. 

 Given the record, we cannot say that there was no evidence to support the jury's finding
that Dahlstrom was ready, willing, and able to deliver good and marketable title to the 115-acre tract and
the 1,050 acres, free and clear of all encumbrances, but was prevented from doing so by Allan. Moreover,
we cannot say that such finding is so contrary to the overwhelming weight of the evidence as to be
manifestly improper or unjust. Therefore, we overrule Allan's first and second points of error.

 In its third point of error, Allan complains that the trial court improperly excluded evidence
of litigation pending between Dahlstrom and a judgment creditor which affected title to the 115-acre tract. 
The admission or exclusion of evidence rests with the sound discretion of the trial court. Tex. R. Civ. Evid.
103; Jackson v. Van Winkle, 660 S.W.2d 807, 810 (Tex. 1983); AccuBanc Mortgage Corp. v.
Drummonds, 938 S.W.2d 135, 151 (Tex. App.--Fort Worth 1996, no writ). Review of a trial court's
evidentiary rulings entails a two-step analysis. In order to obtain a reversal of a judgment based upon error
of the trial court in admission or exclusion of evidence, Allan must show: (1) the trial court committed error
and (2) the error was reasonably calculated to cause and probably did cause rendition of an improper
judgment. See Tex. R. App. P. 81(b); Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex.
1989). The trial court commits error only when it acts in an unreasonable and arbitrary manner, or acts
without reference to any guiding principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.
1991); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986). 

 The evidence Allan sought to have admitted concerned a dispute between Dahlstrom and
B.D. Holt Company regarding the 115-acre tract. The trial court sustained Dahlstrom's objection that the
evidence was not relevant to the pending cause. Evidence is relevant if it tends to make the existence of
a fact that is of consequence to the determination of the action more probable or less probable than it would
be without the evidence. Tex. R. Civ. Evid. 401. The essential question before the jury was whether, on
April 18, 1995, Dahlstrom was ready, willing, and able to convey good and marketable title to the 1,050-acre tract in Hays and Llano counties and the 115-acre tract, free and clear of liens and encumbrances,
but was prevented from doing so by Allan. 

 While a dispute existed between Dahlstrom and B.D. Holt regarding the 115-acre tract,
suit was not filed until February 8, 1996, almost ten months after the April 18, 1995 deadline to convey
title. Allan argues that while litigation did not ensue until February 1996, the dispute created a cloud on the
title to the land. We disagree. Only a recorded instrument can affect the title to real property. Tex. Prop.
Code Ann. § 13.001-.005 (West 1996). 

 Because no suit was pending on the date conveyance was due, and because no recorded
instrument, such as a lis pendens, had been filed to reflect any interest B.D. Holt claimed in the 115-acre
tract, any dispute between Dahlstrom and B.D. Holt did not cloud legal title to the tract. Any evidence
regarding a possible cloud on the title was, therefore, not relevant to the cause before the trial court. See
Tex. R. Civ. Evid. 401. We, therefore, cannot say the trial court abused its discretion by excluding the
evidence regarding the dispute between Dahlstrom and B.D. Holt. We overrule Allan's third point of error. 


 In its fourth point of error, Allan complains of the trial court's exclusion of testimony by two
witnesses, Stan Curry and James Norman. Curry's excluded testimony, as set out in Allan's offer of proof,
regarded the B.D. Holt dispute and litigation discussed above. Because evidence of this dispute was not
relevant, the trial court did not err by excluding Curry's testimony. 

 Allan also attempted to introduce testimony by James Norman regarding the proposed
transfer of the FDIC lien to Cecilia Austin and the effect such action would have on remaining liens on the
property, which were junior to the FDIC's lien, and the marketability of title to the 115-acre tract. (5) Allan
also sought to have Norman testify about the existence of a judgment by B.D. Holt against Dahlstrom
regarding the 115-acre tract. 

 A trial court has broad discretion in deciding whether to admit expert testimony, and its
decision will not be disturbed unless there is an abuse of discretion. Lopez v. City Towing Assocs., Inc.,
754 S.W.2d 254, 260 (Tex. App.--San Antonio 1988, writ denied); Herrera v. FMC Corp., 672
S.W.2d 5, 7 (Tex. App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.). To obtain a reversal based on an
evidentiary error, Allan must show the error probably resulted in an improper judgment, i.e., that,
considering the entire record, the judgment turns on the particular evidence excluded or admitted. See Tex.
R. App. P. 81(b)(1); City of Brownsville v. Alvarado, 897 S.W.2d 750, 753-54 (Tex. 1995). Error
in the exclusion of evidence does not require reversal if it is cumulative of other evidence. Mentis v.
Barnard, 870 S.W.2d 14, 16 (Tex. 1994). Based on the record in this case, Norman's testimony about
the effects of Austin obtaining the FDIC lien would have been cumulative of other testimony and evidence. 
Allan obtained essentially the same evidence through his cross-examination of Gene Majors, Dahlstrom's
expert. (6) Regarding Norman's offered testimony about B.D. Holt's judgment against Dahlstrom, we have
held any testimony on this matter was not relevant because that suit was filed after April 18, 1995. Because
the two topics of Norman's excluded testimony were cumulative and not relevant, we cannot say the trial
court abused its discretion by excluding Norman's testimony. We overrule Allan's fourth point of error. 

 In its fifth point of error, Allan argues that the trial court erred by overruling its objection
to question number two of the jury charge and by refusing to include Allan's requested definition regarding
the necessity of tender. Simply stated, Allan asserts that the jury charge was incorrect because the ultimate
issue was tender of performance, rather than whether Dahlstrom was ready, willing, and able to perform
but was prevented from doing so by Allan. 

 The trial court has great discretion in submitting the jury charge. Cain v. Timberwalk
Apartments Partner, Inc., 942 S.W.2d 697, 701 (Tex. App.--Houston [14th Dist.] 1997, writ
requested); Texas Dep't of Transp. v. Ramming, 861 S.W.2d 460, 463 (Tex. App.--Houston [14th
Dist.] 1993, writ denied). This discretion, however, is subject to the requirement that the questions
submitted must control the disposition of the case, be raised by the pleadings and evidence, and properly
submit the disputed issues for the jury's deliberation. Cain, 942 S.W.2d at 701. The trial court submitted
the following question to the jury:


Question No. 2:


As of April 18, 1995, [was Dahlstrom] ready, willing, and able to deliver good and
marketable title, free and clear of liens and encumbrances, to the 115 acre Hays County
tract, and the 1050 acre Llano and Blanco Counties tract, but [was] prevented from doing
so by [Allan]?


 Allan contends that a party seeking specific performance, as Dahlstrom is, must first tender
performance of his own obligations under the contract. While we agree with this general statement of the
law, there are exceptions to this rule, one being that when the obligation of a party depends upon a certain
condition being performed, and the fulfillment of that condition is prevented by the acts of the other party,
the condition is considered fulfilled. Reed v. Ford, 760 S.W.2d 26, 29 (Tex. App.--Dallas 1988, no
writ); Sargent v. Highlite Broadcasting Co., 466 S.W.2d 866 (Tex. Civ. App.--Austin 1970, no writ). 
The facts of this case support the submission of this question on the exception to the general law. 
Additionally, Dahlstrom raised this issue in its pleadings. Because the three requirements for submitting a
jury question were met in this case, we cannot say the trial court abused its discretion in submitting question
number two to the jury. 

 In addition to challenging jury question number two, Allan contends the trial court should
have included its requested instruction regarding the necessity of tender. As with questions submitted in
the jury charge, the instructions included in the jury charge are within the discretion of the trial court. Great
Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1, 902 S.W.2d 488, 497 (Tex. App.--Austin 1993),
rev'd in part on other grounds, 908 S.W.2d 415 (Tex. 1995); Eoff v. Hal & Charlie Peterson Found.,
811 S.W.2d 187, 192 (Tex. App.--San Antonio 1991, no writ). The applicable standard of review is
clear abuse of discretion. Great Am. Ins., 902 S.W.2d at 497; Eoff, 811 S.W.2d at 192. Because,
under the facts of this case, an exception applies which negates the necessity of tender when it is prevented
by the actions of the other party, we cannot say the trial court clearly abused its discretion by refusing to
include Allan's requested instruction regarding the necessity of tender. We overrule Allan's fifth point of
error. 

 In its sixth point of error, Allan argues the trial court erred by overruling its motion to modify
the final judgment because the judgment materially altered the rights and obligations of the parties. 
Specifically, Allan claims it was harmed by the judgment ordering specific performance because the trial
court's judgment orders Allan to accept title to both properties by means of a deed from Dahlstrom
warranting title to the properties against all claims "except any claims made and/or recorded after April 18,
1995." Allan asserts that the order requires him to accept title to the properties in payment of the debt even
if Dahlstrom has, since the date performance was due, borrowed money by securing the loan with a
mortgage on the properties. 

 The trial court had no power to decree specific performance in any manner except in
keeping with the terms of the 1994 Agreement. See Hubler v. Oshman, 700 S.W.2d 694, 699 (Tex.
App.--Corpus Christi 1985, no writ); Brantley v. Etter, 662 S.W.2d 752, 757 (Tex. App.--San
Antonio 1983, writ ref'd n.r.e.). The original agreement required Dahlstrom to convey good and
marketable title to Allan free and clear of all liens and encumbrances. The trial court, therefore, could not
order Allan to specifically perform by accepting title to the properties if Dahlstrom could not convey title
free and clear of all liens and encumbrances. Ordering Allan to accept title to one or both of the pieces of
property having an outstanding claim attached after April 18, 1995 was not consistent with the terms of the
1994 Agreement. The trial court, therefore, erred by so ordering. We accordingly sustain Allan's sixth
point of error and modify the trial court's order requiring Allan to accept title to the properties without
Dahlstrom warranting title against claims made or recorded after April 18, 1995. 

 The trial court's order should be modified to reflect that (1) Allan Construction Company,
Inc. is ordered to accept, in full accord, satisfaction and payment of the 1994 settlement, from Gay
Dahlstrom Trust and the James C. Ruby, Sr. Revocable Trust No. 2, title to the 1,050-acre tract in Llano
and Blanco Counties, such title to be conveyed by Warranty Deed, warranting title to such 1,050 acres
against all claims against same, and (2) Allan Construction Company, Inc. is ordered to accept, in full
accord, satisfaction and payment of the 1994 settlement, from Cecilia Austin, title to the 115-acre tract in
Hays County, such title to be conveyed by Warranty Deed, warranting title to such 115 acres against all
claims against same. In its seventh point of error, Allan argues that the trial court erred by enjoining it
from foreclosing on the two properties because Dahlstrom did not perform under the 1994 Agreement. 
Having determined that the trial court did not err by rendering judgment in favor of Dahlstrom by holding
that Dahlstrom was ready, willing, and able to deliver good and marketable title to the two properties, free
and clear of all encumbrances, but was prevented from doing so by Allan, we hold the trial court also did
not err by enjoining Allan from foreclosing on the properties. We overrule Allan's seventh point of error. 


 In its final point of error, Allan contends the trial court erred by denying its request for
declaratory relief and excluding evidence of attorney's fees. (7) We agree with Allan's argument that the
disposition of this point of error should follow the disposition of the previous points. Having determined
that the trial court did not err by rendering judgment in favor of Dahlstrom by holding that Dahlstrom was
ready, willing, and able to deliver good and marketable title to the two properties, free and clear of all
encumbrances, but was prevented from doing so by Allan, we hold the trial court also did not err by
denying Allan's counterclaim for declaratory judgment against Dahlstrom. 

 Regarding the exclusion of evidence of attorney's fees, as discussed above, the admission
or exclusion of evidence rests within the sound discretion of the trial court. New Braunfels Factory Outlet
v. IHOP, 872 S.W.2d 303, 310 (Tex. App.--Austin 1994, no writ). The trial court commits error only
when it acts in an unreasonable and arbitrary manner, or acts without reference to any guiding principles. 
Beaumont Bank, 806 S.W.2d at 226; Downer, 701 S.W.2d at 241-42. In this cause, the trial court
excluded Allan's evidence of the amounts of reasonable attorney's fees. 

 Allan was entitled to seek attorney's fees under the Declaratory Judgments Act. See Tex.
Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). The grant or denial of attorney's fees under the
act is, however, within the discretion of the trial court. Oake v. Collin County, 692 S.W.2d 454, 456
(Tex. 1985). On appeal, Allan has challenged only the trial court's exclusion of the evidence and has not
challenged the trial court's refusal to award attorney's fees. Our review of the record reveals that, even
though the trial court excluded evidence of the amounts of attorney's fees to which Allan claimed it was
entitled, the trial court would not have abused its discretion by refusing to award attorney's fees to Allan;
therefore, we cannot say the trial court abused its discretion by excluding evidence on the exact amounts
to which Allan's attorney claimed Allan was entitled. We overrule Allan's eighth point of error. 


CONCLUSION


 The trial court's order regarding specific performance is modified as set forth above, and
we affirm the judgment as modified. 



 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Modified and, as Modified, Affirmed

Filed: August 28, 1997

Do Not Publish

1. The record and the briefs contain references to this property as both 112 acres and 115 acres. 
For simplicity, we will refer to the property as the "115-acre tract." 
2. Killian, William Allan's son-in-law, was Allan's attorney and held a 25% interest in whatever
Allan realized from the 1991 Agreement. 
3. The lien applied to an undivided one-half interest in the 1,050 acres.
4. A foreclosure sale of the senior lien extinguishes junior liens on the land. See Diversified
Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc., 576 S.W.2d 794, 806 (Tex. 1978);
First Nat'l Bank in Dallas v. Whirlpool Corp. 517 S.W.2d 262, 269 (Tex. 1975); Richard H. Sikes,
Inc. v. L & N Consultants, Inc., 586 S.W.2d 950, 954 (Tex. Civ. App.--Waco 1979, writ ref'd n.r.e.). 

5. Allan summarized Norman's testimony in its offer of proof which is included in the record for
review. Dahlstrom challenges whether this Court can review the offer of proof, asserting that Allan did not
obtain a ruling by the trial court on the offer. See Tex. R. App. P. 52. While Dahlstrom is correct that
Allan did not specifically ask the trial court to rule on the offer of proof, the record reflects that, immediately
following the summary of Norman's testimony, the trial court stated, "I've already ruled that I was going
to exclude that testimony." Assuming without deciding that Allan properly preserved any alleged error for
review, we will address whether the trial court erred in excluding Norman's testimony. 
6. On cross-examination, Majors admitted that a release of the FDIC lien by Austin would have
had no effect on judgment liens pending on the property. 
7. Allan sought a declaratory judgment declaring that Allan was entitled to foreclose the liens against
Dahlstrom's properties. 


strom was
ready, willing, and able to deliver good and marketable title to the two properties, free and clear of all
encumbrances, but was prevented from doing so by Allan, we hold the trial court also did not err by
denying Allan's counterclaim for declaratory judgment against Dahlstrom. 

 Regarding the exclusion of evidence of attorney's fees, as discussed above, the admission
or exclusion of evidence rests within the sound discretion of the trial court. New Braunfels Factory Outlet
v. IHOP, 872 S.W.2d 303, 310 (Tex. App.--Austin 1994, no writ). The trial court commits error only
when it acts in an unreasonable and arbitrary manner, or acts without reference to any guiding principles. 
Beaumont Bank, 806 S.W.2d at 226; Downer, 701 S.W.2d at 241-42. In this cause, the trial court
excluded Allan's evidence of the amounts of reasonable attorney's fees. 

 Allan was entitled to seek attorney's fees under the Declaratory Judgments Act. See Tex.
Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). The grant or denial of attorney's fees under the
act is, however, within the discretion of the trial court. Oake v. Collin County, 692 S.W.2d 454, 456
(Tex. 1985). On appeal, Allan has challenged only the trial court's exclusion of the evidence and has not
challenged the trial court's refusal to award attorney's fees. Our review of the record reveals that, even
though the trial court excluded evidence of the amounts of attorney's fees to which Allan claimed it was
entitled, the trial court would not have abused its discretion by refusing to award attorney's fees to Allan;
therefore, we cannot say the trial court abused its discretion by excluding evidence on the exact amounts
to which Allan's attorney claimed Allan was entitled. We overrule Allan's eighth point of error. 


CONCLUSION


 The trial court's order regarding specific performance is modified as set forth above, and
we affirm the judgment as modified. 



 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Modified and, as Modified, Affirmed

Filed: August 28, 1997

Do Not Publish

1. The record and the briefs contain references to this property as both 112 acres and 115 acres. 
For simplicity, we will refer to the property as the "115-acre tract." 
2. Killian, William Allan's son-in-law, was Allan's attorney and held a 25% interest in whatever
Allan realized from the 1991 Agreement. 
3. The lien applied to an undivided one-half interest in the 1,050 acres.
4. A foreclosure sale of the senior lien extinguishes junior liens on the land. See Diversified
Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc., 576 S.W.2d 794, 806 (Tex. 1978);
First Nat'l Bank in Dallas v. Whirlpool Corp. 517 S.W.2d 262, 269 (Tex. 1975); Richard H. Sikes,
Inc. v. L & N Consultants, Inc., 586 S.W.2d 950, 954 (Tex. Civ. App.--Waco 1979, writ ref'd n.r.e.). 

5. Allan summarized Norman's testimony in its offer of proof which is included in the record for
review. Dahlstrom challenges whether this Court can review the offer of proof, asserting that Allan did not
obtain a ruling by the trial court