**Affirmed and Opinion Filed May 5, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

_____

### No. 05-20-00855-CV
_____

**EMANUEL LEWIS, ON BEHALF OF HIMSELF AND A CLASS OF CERTAIN DALLAS COUNTY DETENTION SERVICE OFFICERS, Appellant**

**V.**

**DALLAS COUNTY SHERIFF MARIAN BROWN, IN HER OFFICIAL CAPACITY, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-11810**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Garcia
Opinion by Justice Pedersen, III

Detention Security Officer Emanuel Lewis sought injunctive relief against Marian Brown, Dallas County Sheriff—in her official capacity—in relation to Sheriff Brown's actions regarding the use of the county jail and conditions in the county jail amid the COVID-19 pandemic. Sheriff Brown filed a plea to the jurisdiction, for which the trial court conducted a non-evidentiary hearing. The trial court entered an order granting Sheriff Brown's plea to the jurisdiction, which

effectively dismissed Officer Lewis's claims. Officer Lewis appeals that order. After reviewing the parties' briefs and the record, we affirm the judgment of the trial court.

## I. BACKGROUND

By March 2020, the contagious COVID-19 coronavirus disease began to infect people in the Dallas County Jail ("Jail"). Sheriff Brown was tasked with managing the Jail. Officer Lewis worked as a detention security officer in the Jail. Officer Lewis—both as an individual and as the representative of a putative class of Dallas County detention service officers who have not been diagnosed with COVID-19—filed a lawsuit against Sheriff Brown due to her actions in managing the Jail in response to the COVID-19 pandemic.[1] Officer Lewis pled that Sheriff Brown acted *ultra vires*, alleging she had:

> (a)    created an ongoing public health nuisance and failed to abate that nuisance, . . .
> (b)    failed to maintain the Jail in a clean and sanitary condition in accordance with standards of sanitation and health, . . . and
> (c)    ignored the requirements that the Jail have the appropriate number of jailers, sufficient staff, and preventative maintenance.

Officer Lewis alleged Sheriff Brown's acts threatened to cause him, and the members of his putative class of detention service officers, personal injury and death. Officer Lewis further pled that Sheriff Brown was negligent in her duties. His petition sought solely injunctive relief to enjoin Sheriff Brown from "continuing to operate the Jail in a negligent and grossly negligent manner" and to require that she

---

[1] On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.

"immediately begin and continue to maintain effective preventative measures to control the spread of COVID-19 at the Jail." Officer Lewis sought no damages or other relief.

Sheriff Brown asserted a plea to the jurisdiction and filed an answer. The trial court held a hearing and granted Sheriff Brown's plea to the jurisdiction.[2] Officer Lewis then timely filed this appeal.

## II.    ISSUES RAISED ON APPEAL

Officer Lewis raises a single issue on appeal with four sub-issues:

Issue One: Whether the trial court erred in granting the Sheriff's plea to the jurisdiction.

> 1. Whether the Texas Workers' Compensation Act shields the Sheriff from suit by Officer Lewis and the Class even though they are seeking only injunctive relief to prevent future harm, not damages.
> 2. Whether Officer Lewis has standing to sue for an injunction to prevent the Sheriff's *ultra vires* and negligent conduct before he becomes sick or dies.
> 3. Whether governmental immunity deprived the trial court of jurisdiction from Officer Lewis's claims for ultra vires conduct by the Sheriff that is without legal authority or involved the Sheriff 's failure to perform purely ministerial acts mandated by statute.
> 4. Whether Officer Lewis's negligence and negligence per se claims against the Sheriff fall within the Texas Tort Claims Act.

---

[2] The trial court's order granting Sheriff Brown's plea to the jurisdiction did not specify the basis of its ruling.

–3–

### III. STANDARD OF REVIEW

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A trial court's ruling on a plea challenging subject matter jurisdiction is reviewed *de novo. City of Dallas v. Redbird Dev. Corp.*, 143 S.W.3d 375, 380 (Tex. App.—Dallas 2004, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action based on lack of subject-matter jurisdiction without regard to the merits of the claim. *Town of Fairview v. Lawler*, 252 S.W.3d 853, 855–56 (Tex. App.—Dallas 2008, no pet.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). A plea to the jurisdiction may challenge either the pleadings or the existence of jurisdictional facts. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

### IV. DISCUSSION

**A. Subject Matter Jurisdiction**

Because subject matter jurisdiction is essential to Officer Lewis's claims, we address that issue first. Officer Lewis contends that governmental immunity does not protect Sheriff Lewis from the suit, alleging her actions were *ultra vires*. We therefore address governmental immunity, *ultra vires* action, and whether the allegations and facts pled sustain a viable *ultra vires* action.

–4–

*i.*     *Governmental Immunity*

Under the common-law doctrine of sovereign immunity, the state cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006)). Sovereign immunity and governmental immunity are two related common law doctrines that protect the government from suit. *Harris County v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018).[3] The purpose of governmental immunity is pragmatic: to shield the public from the costs and consequences of improvident actions of their governments. *Tooke*, 197 S.W.3d at 332. Sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued—unless the state or governmental unit consents to suit. *Miranda*, 133 S.W.3d at 224. Absent a valid statutory waiver of immunity, a trial court may not assume subject-matter jurisdiction over a suit against a governmental unit. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775 (Tex. 2018) (citing *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 926–27 (Tex. 2015)).

*ii.*     *Ultra Vires Action*

Even if a governmental entity's immunity has not been waived by the Legislature, a claim may be brought against a governmental official if the official

---

[3] "'Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts.'" *Annab*, 547 S.W.3d at 612 (quoting *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011)).

engages in *ultra vires* conduct. *City of Houston v. Houston Mun. Employees Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018). Suits to require state officials to comply with a statutory or constitutional provision are not prohibited by sovereign immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373–77 (Tex. 2009). Plaintiffs in *ultra vires* suits must "allege, and ultimately prove, that the officer [(i)] acted without legal authority or [(ii)] failed to perform a purely ministerial act." *Id. Ultra vires* claims depend on the scope of a state official's authority. *Hall v. McRaven*, 508 S.W.3d 232, 234 (Tex. 2017).

It is not an *ultra vires* act for an official or agency to make an erroneous or improvident decision while staying within its authority. *Hall*, 508 S.W.3d at 242. *Ultra vires* suits do not attempt to exert control over the state—rather they seek to enforce existing policy. *Heinrich*, 284 S.W.3d at 372. Nevertheless, governmental immunity "does not bar a suit for prospective injunctive relief remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *Dallas County Hosp. Dist. v. Sosa*, No. 05-19-01164-CV, 2020 WL 4581666, at *3 (Tex. App.—Dallas Aug. 10, 2020, pet. filed) (mem. op.) (citing *Heinrich*, 284 S.W.3d at 369).[4]

---

[4] "We conclude that while governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *Heinrich*, 284 S.W.3d at 368–69.

### iii. *Whether Sheriff Brown Acted Without Lawful Authority*

First, Officer Lewis asserts that Sheriff Brown acted in excess of the bounds of her granted authority—that her conduct was contrary to her mandatory statutory duties. An official acts beyond the limits of her authority when she (i) misinterprets the enabling law that creates the authority for her to act or (ii) acts in conflict with the law that authorizes her to act or violates state law. *Hall*, 508 S.W.3d at 238, 241. Officer Lewis argues that Sheriff Brown acted outside of her authority when she violated her mandatory duties by operating the Jail in an unclean, unsanitary condition and as a public nuisance. With regard to Sheriff Brown's duties, the Local Government Code provides:

> (a) The sheriff of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court.
> (b) The sheriff may appoint a jailer to operate the jail and meet the needs of the prisoners, but the sheriff shall continue to exercise supervision and control over the jail.

TEX. LOC. GOV'T CODE ANN. § 351.041.[5]

Officer Lewis's *ultra vires* claims relate to policies and actions at the Jail regarding (i) social distancing guidance from the Centers for Disease Control and Prevention ("CDC"), (ii) testing for COVID-19, (iii) supply and use of personal protective equipment ("PPE"), (iv) training for dealing with inmates that exhibit

---

[5] We note, however, that the Commission on Jail Standards adopts reasonable rules and procedures establishing minimum standards for many aspects of county jails. *See* TEX. GOV'T CODE ANN. § 511.009(a)(1-5).

symptoms of COVID-19, and (v) cleanliness of the premises. Officer Lewis directs us to the Local Government Code, which states: A county jail must be: "maintained in a clean and sanitary condition in accordance with standards of sanitation and health." LOC. GOV'T § 351.010(4). Officer Lewis directs us to the Texas Health and Safety Code—which provides a public health nuisance includes "a place, condition, or building controlled or operated by a state or local government agency that is not maintained in a sanitary condition" and "an object, place, or condition that is a possible and probable medium of disease transmission to or between humans." TEX. HEALTH & SAFETY CODE ANN. § 341.011(4), (12). Officer Lewis further refers to the Texas Health and Safety Code's nuisance statute, which provides that "a person shall abate a public health nuisance existing in or on a place the person possesses as soon as the person knows that the nuisance exists." HEALTH & SAFETY § 341.012.

Officer Lewis directs us to our opinion in *Dallas County Hospital District v. Sosa*, in which we discussed *ultra vires* claims in the context of a specific Property Code statute regarding hospital liens:

> Section 55.004 of the property code provides a hospital lien may include "the amount of a physician's reasonable and necessary charges for emergency hospital care services provided to the injured individual" but does not cover charges "for other services that exceed a reasonable and regular rate for the services."

*Sosa*, 2020 WL 4581666, at *7 (quoting TEX. PROP. CODE ANN. § 55.004(c), (d)(1)). We held, in part, that Parkland Hospital's Chief Operating Officer lacked statutory authority to authorize a hospital lien for charges that were not reasonable or

–8–

necessary in contravention of the terms of the Texas Property Code. *Id.*; PROP.
§ 55.004.

Unlike *Sosa*, Officer Lewis's pleadings do not point to a specific statute that Sheriff Brown acted beyond her authority or without authority. Officer Lewis does not dispute that Sheriff Brown is keeper of the Jail, authorized to safely keep all prisoners committed to the jail by a lawful authority. Officer Lewis's briefing directs us to no statutorily required action that Sheriff Brown has failed to perform. Indeed, he admits Sheriff Brown has taken action regarding the five bases in his petition. Officer Lewis's pleadings explain:

(i)     Inmates and officers were organized in pods that were to quarantine together should someone in the pod have come under suspicion of having contracted COVID-19.[6]

(ii)    Although detention service officers were excluded from testing, the Jail permitted COVID-19 testing for inmates through Parkland Hospital.

(iii)   Albeit limited, the Jail provided PPE to detention service officers and inmates.

---

[6] We note that CDC guidelines regarding COVID-19, including those on social distancing, are not binding on the Jail. *See Sanchez v. Brown*, 3:20-CV-00832-E, 2020 WL 2615931, at \*18 (N.D. Tex. May 22, 2020) ("Should legislators deem it appropriate for CDC recommendations to become law, they will surely make them so. Using this Court's power to order the jail to follow what are now just recommendations from the CDC would turn this district court into a lawmaking body.").

    (iv)    Although Sheriff Brown did not provide specific training to detention service officers regarding COVID-19, the Jail implemented policies on handling infectious diseases and shared short videos about how to wear PPE.

    (v)    The Jail was routinely cleaned, and the Jail was provided with disinfectant and bleach-based cleaners.

Nevertheless, Officer Lewis's petition asserts that Sheriff Brown should "begin and continue to maintain effective preventative measures to control the spread of COVID-19"—suggesting additional measures to ensure (i) social distancing under CDC guidelines; (ii) increased testing for COVID-19; (iii) increased supply and use of PPE; (iv) additional training on COVID-19; and (v) increased cleanliness at the Jail.[7]

Officer Lewis does not direct us to a statute applicable to Sheriff Brown, which requires her to take the actions described in his five bases. We have likewise found no such statutory requirements. Officer Lewis does not point us to facts that Sheriff Brown has misinterpreted the enabling law that creates authority for her to

---

[7] Officer Lewis's petition also complains of jailor and staffing levels at the Jail. However, neither his petition nor briefing directs us to any facts or specific allegations that jailor or staffing levels fall below statutory requirements. *See* 37 TEX. ADMIN CODE § 275.4. ("One jailer shall be provided on each floor of the facility where 10 or more inmates are housed, with no less than 1 jailer per 48 inmates or increment thereof on each floor for direct inmate supervision. . . . Sufficient staff to include supervisors, jailers and other essential personnel as accepted by the Commission shall be provided to perform required functions."). Officer Lewis's complaints of staffing levels relate to the CDC guidelines of social distancing, which are not binding on the Jail. Additionally, Officer Lewis's petition complains of "preventative maintenance" at the Jail. Neither his petition nor his briefing directs us to any facts or specific allegations that any aspect of the Jail requires preventative maintenance.

act, acted in conflict with the law that authorizes her to act, violated state law, or otherwise acted without lawful authority. We conclude that Sheriff Brown did not act without lawful authority.

### iv. Whether Sheriff Brown Failed to Perform a Ministerial Act

Second, Officer Lewis asserts that Sheriff Brown failed to perform a ministerial act—that she has ignored her statutory obligations. An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the official's discretion. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). If an action involves personal deliberation, decision, and judgment, it is discretionary—not ministerial. *Dallas County v. Halsey*, 87 S.W.3d 552, 557 (Tex. 2002) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)). Whether a governmental activity is discretionary is a question of law. *State v. San Miguel*, 2 S.W.3d 249, 251 (Tex. 1999); *City of Irving v. Seppy*, 301 S.W.3d 435, 442 (Tex. App.—Dallas 2009, no pet.).

Officer Lewis argues that the "mere fact that the Sheriff has options for **how** to maintain the jail in a clean and sanitary condition and **how** to abate a public nuisance does not vest her with any discretion to ignore her statutory obligation to do so." (emphasis in original). Officer Lewis directs us to the Texas Supreme Court's holding in *City of Houston v. Houston Municipal Employees Pension System* in which:

> [t]he System requested various types of employee data and designation of a point person to provide employee and payroll information. This request and two additional requests went unanswered. Further, the City did not make contributions to fund the pension plan for employees of HF Corporation, HF Foundation, and CC Services.

*Houston Mun. Employees Pension Sys.*, 549 S.W.3d at 573. Pertinent here, the System argued that article 6243h required the City to provide pension payments and that such a requirement was ministerial, not discretionary. *Id.* at 582. The Texas Supreme Court agreed, holding that article 6243h created a ministerial duty. *Id.* at 582. ("Article 6243h states that the City "shall provide full and timely information" to the Pension System and "shall make contributions" to the Pension System. (quoting TEX. REV. CIV. STAT. art. 6243h, §§ 2(u), 8A(a))). The Texas Supreme Court narrowed the inquiry as to whether the City's duties were discretionary or ministerial as follows: "[t]he controversy here is not about *how* the City must make the payments, only *whether* it must. . . . [Article 6243h] *leaves no room for the City to exercise judgment* regarding whether the payments must be made." *Id*. at 582 (emphasis added).

Unlike *Houston Municipal Employees Pension System*, the instant case does not involve a statute that "leaves no room" for Sheriff Brown to exercise judgment. *See generally id.* Neither (i) the statutes that directly govern Sheriff Brown's duties,[8] nor (ii) the statutes Officer Lewis cites regarding the maintenance and conditions of

---

[8] *See* LOC. GOV'T § 351.041.

the Jail,[9] nor (iii) the statutes relating to public nuisance[10] require Sheriff Brown to act with such certainty or specificity as is found in article 6243h. Furthermore, although Officer Lewis claims Sheriff Brown has "ignored" her duties, he concedes—as discussed above—that Sheriff Brown has taken actions to fulfill her duties. Thus, unlike *Houston Municipal Employees Pension System*, the instant controversy is not *whether* Sheriff Brown fulfilled her duties as Sheriff but, rather, *how* Sheriff Brown has fulfilled her ministerial duties. Sheriff Brown's exercise of her statutory authority in serving as the "keeper of the county jail," with the "authority to supervise, direct, or control the daily operation of the county jail" is an exercise of her discretionary powers. *See* LOC. GOV'T § 351.041; Tex. Att'y Gen. Op. No. H-1190 (1978).

Therefore, Officer Lewis's claims are based on Sheriff Brown's exercise of discretion, not whether she has failed to perform a ministerial act. We conclude that Sheriff Brown has not failed to perform a ministerial act.[11] In combination with our

---

[9] *See* LOC. GOV'T § 351.010(4).

[10] *See* HEALTH & SAFETY § 341.011(4), (12); HEALTH & SAFETY § 341.012

[11] Officer Lewis sought relief that would result in control over Sheriff Brown's exercise of her discretionary authority. A suit that seeks to direct or control a government official in the exercise of her absolute discretionary authority is a suit to control state action. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163-64 (Tex. 2016); *Heinrich*, 284 S.W.3d at 372. Such suits to control discretionary state action are barred by sovereign immunity. *See Klumb v. Houston Mun. Employees Pension Sys.*, 458 S.W.3d 1, 11 (Tex. 2015) (holding that, absent a conspicuous and irreconcilable conflict, the Texas Supreme Court could not further consider discretionary authority afforded to a municipal pension board under article 6243h.).

conclusion that Sheriff Brown had not acted without lawful authority, we conclude Officer Lewis has not pled an actionable *ultra vires* claim against Sheriff Brown.

### v. Liability Under the Texas Torts Claim Act

Officer Lewis asserts that his negligence claims, which request solely injunctive relief, fall within the scope of the Texas Torts Claim Act ("TTCA")—that the TTCA provides an independent waiver of sovereign immunity because his claims arise from the "condition or use of tangible personal or real property" at the Jail. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2).[12] A statutory waiver of sovereign immunity must be construed narrowly, and statutory language waiving immunity must be clear and unambiguous. *In re Smith*, 333 S.W.3d 582, 587 (Tex. 2011); *see also* TEX. GOV'T CODE § 311.034 (codifying the clear and unambiguous standard). Where the language of a statute is unambiguous, we interpret the statute according to its plain meaning. *Sunstate Equip. Co., LLC v. Hegar*, 601 S.W.3d 685, 690 (Tex. 2020).

Section 101.023 of the TTCA, provides limitations on the amount of liability and reads, in each subsection, that liability "is limited to money damages." CIV. PRAC. & REM. § 101.023. We have found no other section of the TTCA that addresses or permits injunctive relief against a governmental unit. The TTCA waives sovereign immunity only "to the extent of liability created by [the] chapter." CIV.

---

[12] "A governmental unit in the state is liable for: personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." CIV. PRAC. & REM. § 101.021(2).

–14–

PRAC. & REM. § 101.025(a). Since the only measure of liability provided by the TTCA is money damages, the TTCA does not waive sovereign immunity for injunctive relief. *See* CIV. PRAC. & REM. § 101.023; *see*, *e.g.*, *Tex. Dep't of Transp. v. Ramming*, 861 S.W.2d 460, 468 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (holding the exclusive mode and measure of liability for which the State is willing to waive sovereign immunity is for money damages).[13] Thus, we conclude the TTCA does not afford Officer Lewis an avenue to pursue injunctive relief for his negligence claims.

Furthermore, even if we were to conclude the TTCA waived immunity such that Officer Lewis could proceed with injunctive relief under his negligence claims, the TTCA does not waive a governmental unit's immunity for a claim based on either (i) the governmental unit's failure to perform an act the unit was not required by law to perform or (ii) the governmental unit's decision not to perform an act or its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the governmental unit's

---

[13] Our sister court addressed liability under the TTCA.

> Section 101.023 imposes a limit on the State's liability. "[Liability] is a broad legal term.... It has been referred to as of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely." BLACK'S LAW DICTIONARY 823 (5th ed. 1979). Therefore, the only legal obligations, however characterized, capable of being imposed on the State are those specified by § 101.023. Section 101.023 specifies that the State's only permissible liability is "money damages in a maximum amount of $250,000." *Therefore, § 101.023 states simply and unequivocally that the State can only be liable for "money damages" (as opposed to injunctive relief) that do not exceed $250,000. In other words, § 101.023 states the exclusive mode and measure of liability for which the State is willing to waive sovereign immunity.*

*Ramming*, 861 S.W.2d at 468 (emphasis added).

–15–

discretion. CIV. PRAC. & REM. § 101.056; *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 665 (Tex. 2019).[14] As we have discussed and concluded above, Officer Lewis's suit sought to hold Sheriff Brown liable for claims based on (i) her failure to perform acts not required by law and (ii) her actions taken under her discretionary authority. Consequently, we conclude the TTCA does not waive Sheriff Brown's immunity for Officer Lewis's negligence claims. Coupled with our conclusion that Officer Lewis failed to plead an actionable *ultra vires* suit, we overrule Officer Lewis's sole issue. We do not reach his remaining sub-issues.[15]

---

[14] "Section 101.056 preserves immunity 'for the state's failure to act, when no particular action is required by law.' . . . The exception 'avoid[s] judicial review or interference with those policy decisions committed to the other branches of government.'" *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 665 (Tex. 2019) (citation omitted, quoting *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007)).

[15] Both parties briefed the potential application of the Texas Worker's Compensation Act ("TWCA") and that it applies to "work-related injuries." TEX. LABOR CODE ANN. § 408.001. Officer Lewis specifically pled he had not suffered an injury—that is, he and his putative class have not been sickened or killed by COVID-19. As we have concluded that Officer Lewis pled neither an actionable *ultra vires* claim nor an actionable claim under the TTCA, we pretermit any further discussion of the TWCA.

## V.     CONCLUSION

Because Officer Lewis pled neither an actionable *ultra vires* claim nor an actionable negligence claim under the TTCA against Sheriff Brown, subject matter jurisdiction over those claims is lacking as a matter of law. We therefore affirm the judgment of the trial court.

|  |  |
|---|---|
| | /Bill Pedersen, III// |
| 200855f.p05 | BILL PEDERSEN, III |
| | JUSTICE |



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EMANUEL LEWIS, ON BEHALF
OF HIMSELF AND A CLASS OF
CERTAIN DALLAS COUNTY
DETENTION SERVICE
OFFICERS, Appellant

No. 05-20-00855-CV     V.

DALLAS COUNTY SHERIFF
MARIAN BROWN, IN HER
OFFICIAL CAPACITY, Appellee

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-11810.
Opinion delivered by Justice
Pedersen, III. Justices Reichek and
Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DALLAS COUNTY SHERIFF MARIAN BROWN, IN HER OFFICIAL CAPACITY recover her costs of this appeal from appellant EMANUEL LEWIS, ON BEHALF OF HIMSELF AND A CLASS OF CERTAIN DALLAS COUNTY DETENTION SERVICE OFFICERS.

Judgment entered this 5th day of May, 2021.